# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PRISM TECHNOLOGIES, LLC,<br><br>             Plaintiff,<br><br>v.<br><br>ADOBE SYSTEMS INCORPORATED, et al.<br><br>             Defendants. | Case No. 8:10-cv-220<br><br>**DEFENDANT NUANCE, INC.'S ANSWER AND COUNTERCLAIMS**<br><br>JURY TRIAL DEMANDED |

Defendant Nuance Communications, Inc. ("Nuance") respectfully submits its answer, affirmative defenses and counterclaims to Plaintiff Prism Technologies, LLC's ("Prism") Complaint and states as follows:

## PARTIES

1.      In answer to paragraph 1 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

2.      In answer to paragraph 2 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

3.      In answer to paragraph 3 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

4.      In answer to paragraph 4 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

5.      In answer to paragraph 5 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

6.      In answer to paragraph 6 of the Complaint, Nuance admits that it is a Delaware corporation with its principal place of business at 1 Wayside Road, Burlington, Massachusetts 01803. Nuance admits that Corporation Service Company, 84 State Street, Boston, Massachusetts 02109 is Nuance's agent for service of process. Nuance admits that it conducts business in this judicial district. Nuance denies the remaining allegations of paragraph 6 not expressly admitted here.

7.      In answer to paragraph 7 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

8.      In answer to paragraph 8 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

9.      In answer to paragraph 9 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

10.      In answer to paragraph 10 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

11.      In answer to paragraph 11 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

12.      In answer to paragraph 12 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

## JURISDICTION AND VENUE

13.     In answer to paragraph 13 of the complaint, Nuance admits that the Complaint alleges acts of patent infringement under the patent laws of the United States, Title 35 of the United States Code. Nuance further admits that this Court has subject matter jurisdiction over such claims pursuant to 28 U.S.C. §§ 1331 and 1338(a). Except as expressly admitted, Nuance denies each and every remaining allegation in paragraph 13.

14.     In answer to paragraph 14 of the complaint, Nuance admits that this Court has personal jurisdiction over Nuance and admits that it conducts business in this judicial district. Nuance lacks sufficient knowledge to admit or deny the allegations as they relate to other Defendants and therefore denies those allegations. Except as expressly admitted, Nuance denies each and every remaining allegation in paragraph 14.

15.     In answer to paragraph 15, Nuance admits that venue in this district is purportedly based upon 28 U.S.C. §§ 1391(b)-(c) and 1400(b), and that Nuance has conducted business in this judicial district and/or provided service and support to customers therein, but denies that this judicial district is the most appropriate forum for this case. Nuance lacks sufficient knowledge to admit or deny the allegations as they relate to other Defendants and therefore denies those allegations. Except as expressly admitted, Nuance denies each and every remaining allegation in paragraph 15.

## COUNT 1

## <u>INFRINGEMENT OF U.S. PATENT NO. 7,290,288</u>

16.     In answer to paragraph 16 of the Complaint, Nuance incorporates by reference its answers to paragraphs 1-15 of the Complaint as if fully set forth herein.

17.     In answer to paragraph 17 of the Complaint, Nuance admits that the face of United States Patent No. 7,290,288 ("the '288 patent") lists its title as "Method and System for Controlling Access, by an Authentication Server, to Protected Computer Resources Provided via an Internet Protocol Network" and an issuance date of October 30, 2007.   Nuance lacks sufficient knowledge to admit or deny the remaining allegations contained therein and therefore denies the allegations.

18.     In answer to paragraph 18 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

19.     In answer to paragraph 19 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

20.     In answer to paragraph 20 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

21.     In answer to paragraph 21 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

22.     In answer to paragraph 22 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

23.     In answer to paragraph 23 of the Complaint, Nuance denies each and every allegation contained therein.

24.     In answer to paragraph 24 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

25.     In answer to paragraph 25 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

26.     In answer to paragraph 26 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

27.     In answer to paragraph 27 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

28.     In answer to paragraph 28 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

29.     In answer to paragraph 29 of the Complaint, Nuance lacks sufficient knowledge to admit or deny the allegations contained therein and therefore denies the allegations.

30.     In answer to paragraph 30 of the Complaint, with regard to Nuance, Nuance denies each and every allegation contained therein. With regard to other Defendants, Nuance lacks sufficient knowledge to admit or deny the allegations contained in paragraph 30 and therefore denies the allegations.

31.     In answer to paragraph 31 of the Complaint, with regard to Nuance, Nuance denies each and every allegation contained therein. With regard to other Defendants, Nuance lacks sufficient knowledge to admit or deny the allegations contained in paragraph 31 and therefore denies the allegations.

## PRAYER FOR RELIEF

32.     Nuance denies that Prism is entitled to any relief from Nuance in this action and asks the Court to deny any and all relief requested by Prism from Nuance in its Complaint.

## DEFENSES

33.     Without admitting or acknowledging that it bears the burden of proof as to any of them, Nuance asserts at least the following defenses under Rule 8 of the Federal Rules of Civil Procedure. Nuance reserves the right to assert any other defenses that may be revealed during the course of discovery and its investigation of Prism's claims.

## FIRST DEFENSE

### (Non-Infringement)

34.     Nuance does not and has not infringed any valid and enforceable claim of the '288 patent, whether directly or indirectly, by inducement or contributory infringement, literally or under the doctrine of equivalents.

## SECOND DEFENSE

### (Invalidity)

35.     One or more claims of the '288 patent is invalid for failure to comply with one or more requirements for patentability under Title 35 of the United States Code, including, but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

## THIRD DEFENSE

### (Estoppel)

36.     Prism's requested relief is barred, in whole or in part, by the doctrine of estoppel, including, but not limited to, the doctrine of prosecution history estoppel arising from the patentee's actions, representations , or conduct before the United States Patent and Trademark Office during prosecution of the '288 patent and related patent applications.

## FOURTH DEFENSE

### (Adequate Remedy at Law)

37.     Prism's request for injunctive relief is barred because Prism has an adequate remedy at law for any damages resulting from the actions alleged in the Complaint.

38.     Prism is also barred from recovering costs in connection with this action under 35 U.S.C. § 288.

## FIFTH DEFENSE

### (Unenforceability due to Inequitable Conduct)

39.     The '288 patent is unenforceable due to inequitable conduct before the United States Patent and  Trademark Office.

40.     Richard L. Gregg, Sandeep Giri, and Timothy C. Goeke, the named inventors of the `288 Patent, were employed by Prism Resources, Inc. at the time in which the application for U.S. Pat. No. 6,516,416 ("the `416 Patent") was filed on June 11, 1997.

41.     The  `288  Patent  issued  from  Application  No.  10/230,638  ("the  `638 Application").

42.     The  `416  Patent  issued  from  Application  No.  08/872,710  ("the  `710 Application").

43.     Richard L. Gregg has been an officer of Prism Resources, Inc. since its inception.

44.     Richard L. Gregg has been an officer of Plaintiff Prism Technologies, LLC since its inception.

45.     On information and belief, Prism Technologies LLC, Plaintiff in this action, is the assignee of all right, title, and interest in the `638 Application.  Such assignment took place while the `638 Application was pending before the US Patent and Trademark Office.

46.     Each of Prism Technologies LLC, Richard L. Gregg, Sandeep Giri, and Timothy C. Goeke was aware of and possessed a duty to disclose material prior art known to each of them during the prosecution of the `638 Application, and to communicate truthfully regarding the inventorship of the `638 Application.

47.     Prism contends that the `288 Patent is a continuation-in-part of the `710 Application, which issued as the `416 Patent, and that the `416 Patent is a parent of the `288 Patent.

48.     Under 37 C.F.R. § 1.56 (e), for a continuation-in-part, "the duty under this section includes the duty to disclose to the Office all information known to the person to be material to patentability, as defined in paragraph (b) of this section, which became available between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application."

49.     The `638 Application that issued as the `288 Patent was filed on August 29, 2002.

50.     The `638 Application was pending before the US Patent and Trademark Office from its filing date of August 29, 2002 until it issued as the `288 Patent on October 30, 2007.

**Prism's Concealment of the DTN Prototype and ISA System**

51.     As part of the RIM action, Prism also submitted detailed interrogatory responses (hereinafter "RIM Interrogatory Responses") propounded by RIM.

52.     The RIM Interrogatory Responses contained Prism's response to RIM's Interrogatory No. 8, which asked:

> Describe in detail the date and circumstances of the conception and reduction to practice of the alleged inventions of the asserted claims in United States Patent No. 7,290,288, including identification of all person(s) involved in the conception and reduction to practice of the alleged inventions.

53.     Prism's response to RIM's Interrogatory No. 8, served on July 13, 2009, stated in part:

> Starting around March 1996, Richard L. Gregg began the process that led to the conception of the subject matter of United States Patent No. 6,516,416 ("the '416 patent") when a potential customer, Data Transmission Network Corp. (DTN), asked Mr. Gregg if he could develop a system using the Internet that would replace DTN's existing satellite-based transmission network. Upon undertaking that challenge, Mr. Gregg conceived of the '416 patented invention and directed its development and approved the software design and system architecture as well as managed the design project and performed system tests. The subject matter of the '416 patent was described in a Functional Specification no later than May 6, 1996. Sandeep Giri and Timothy C. Goeke participated in the development of the system along with Mr. Gregg and, under Mr. Gregg's supervision, coded the software for the project. In July 1996, Prism performed a confidential demonstration of the prototype system for DTN personnel.
>
> Richard L. Gregg performed the demonstration at DTN's offices, while Sandeep Giri and Timothy C. Goeke managed the computer servers at Prism Resources. The prototype system and its demonstration to DTN constitutes an actual reduction to practice of the invention defined by the claims of the '416 patent.

54.     Prism's supplemental response to RIM's Interrogatory No. 8, served on October 23, 2009, further stated:

> While Prism's initial response to this interrogatory made reference exclusively to the `416 patent, the facts recited therein apply with equal force to the asserted claims of the '288 patent. Accordingly, the inventions embodied within the asserted claims of the '288 patent

were conceived and reduced to practice by Messrs. Greg, Giri and Goeke as detailed in Prism's initial response to this interrogatory.

55.    The entirety of Prism's supplemental response to RIM's Interrogatory No. 8 was verified under penalty of perjury as true and correct by Richard L. Gregg, the first named inventor of the '288 patent.

56.    The RIM Interrogatory Responses further contained Prism's response to RIM's Interrogatory No. 6 which asked:

> Describe in detail the date and circumstances of the earliest disclosure, sale, or offer for sale to a third party of all alleged inventions disclosed in United States Patent No. 7,290,288, including identification of the third party to which the invention was disclosed, sold, or offered for sale.

57.    Prism's Supplemental Response to RIM's Interrogatory No. 6, served on October 23, 2009 stated in part:

> In July of 1996, Prism performed a confidential demonstration of a prototype system for Data Transmission Network Corporation ("DTN"). To the best of Mr. Gregg's recollection, the DTN personnel present at that demonstration were Robert Herman, Chet Slump, Jay Froshiser and Scott Fleck. Richard L. Gregg performed the confidential demonstration at DTN's offices, while Sandeep Giri and Timothy C. Goeke managed the computer servers at Prism Resources, 2328 Bob Boozer Drive, Omaha, Nebraska 68130-2558. The confidential demonstration which Prism performed for DTN in July of 1996 was the first instance in which Prism used the inventions embodied within at least some of the asserted claims of the '288 patent in the presence of a third party.
>
> The first offer for sale of a commercial embodiment of the asserted claims of the '288 patent was to American Business Information, Inc. ("ABI") during November of 1996. No public disclosure, public use or offer to sell any invention embodied within the asserted claims of the '288 patent was made prior to the June 11, 1996 critical date of the asserted claims of the `288 patent.

58.    Prism's Supplemental Response to RIM's Interrogatory No. 6 was verified as true and correct under penalty of perjury by Richard L. Gregg.

59.    Prism's Second Supplemental Response to RIM's Interrogatory No. 6, served on February 16, 2010, further stated:

> The November 1996 offer for sale of the Internet Subscription Access product was the first offer for sale of the inventions claimed in claims 1-3, 5-21, 23-27, 29-36, 38-54, 56-64, 66- 93, 95-134, 136, 138-140, 143-166, 168-170, 273-175 and 178-187. There was no date of a first offer for sale for the remainder of the inventions claimed in the '288 patent.

60.    The ISA system and commercial embodiments developed for American Business Information, Inc., Securities America, Inc., and Construction Network Services, Inc. were offered for sale in the United States several years before the `638 Application was filed.

61.    Richard L. Gregg, Timothy C. Goeke, Sandeep Giri, and Prism failed to disclose to the US Patent and Trademark Office ("USPTO") the prototype system demonstrated to DTN, although each and every named inventor, Messrs. Gregg, Goeke, and Giri, participated in the development and demonstration of the prototype system prior to the filing of the `638 Application, and all were aware of it during the prosecution of the `638 Application.

62.    Neither Richard L. Gregg nor Prism disclosed the commercial embodiments developed for American Business Information, Inc., Securities America, Inc., or Construction Network Services, Inc., although Prism and Mr. Gregg were aware of these embodiments during the prosecution of the `638 Application and believed that they embodied both the `288 Patent claims and the purportedly related `416 Patent claims.

63.     Information about any embodiment of the claims of the `288 Patent that was on sale before the date of the '638 Application, and particularly years before that date, is information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow the `638 Application, and therefore material to the prosecution of the `638 Application.

64.     Throughout the prosecution of the '638 Application (which led to the '288 patent), Prism sought to claim that the '638 Application was a continuation-in-part of the '710 Application (which led to the '416 patent).

65.     Information about any embodiment of the claims of the `416 Patent (which Prism claimed to the USPTO was related to the `288 Patent) that was on sale before the date of the '638 Application is information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow the `638 Application, and therefore material to the prosecution of the `638 Application.

66.     Prism itself has argued that the prototype system and its demonstration to DTN constituted conception and actual reduction to practice of the inventions claimed by the '288 patent.

67.     Information about any prototype or commercial embodiment that arose more than five years prior to the filing of the `638 Application, that the applicants themselves assert practice claims of the `288 Patent, are information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow the Application No. 10/230,638, and therefore material to the prosecution of the `638 Application.

68.     Information about the DTN prototype and commercial products prepared for American Business Information, Inc., Securities America, Inc., and Construction Network Services, Inc. asserted by applicants as embodying claims of the '288 patent and the allegedly related '416 patent was withheld by the applicants from the US Patent and Trademark Office.

69.     The withheld information about the DTN prototype and three commercial products asserted by applicants as embodying the claims of the `288 Patent and supposedly related `416 Patent was not cumulative of the prior art that was before the US Patent and Trademark Office, and it establishes a prima facie case of unpatentability of at least one claim of the `638 Application by compelling a conclusion that the claim is unpatentable under the preponderance of evidence burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability; since it allegedly includes the collective efforts of the inventors of the `288 Patent which were not before the US Patent and Trademark Office in any other art.

**Material Misrepresentations Concerning Inventorship**

70.     A "Declaration and Power of Attorney" was submitted with the `638 Application, listing Richard L. Gregg as the sole inventor.

71.     The `638 Application included a "Declaration and Power of Attorney" signed by Richard L. Gregg on August 29, 2002 ("the Gregg Declaration").

72.     The Gregg Declaration stated "[t]hat I verily believe I am the original, first and sole inventor (if only one name is listed below)."  There was only one name listed below as an inventor on the Gregg Declaration.  That one name was Richard L. Gregg.

73.     The Gregg Declaration further stated "[t]hat I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, § 1.56(a)."   The Gregg Declaration further stated "[t]hat all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true" and "that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon."

74.     Richard L. Gregg, Sandeep Giri, and Timothy C. Goeke were all named as inventors of the '416 patent that issued out of the '710 Application.

75.     At the time of filing of the '638 Application, Richard L. Gregg sought to claim that the '638 Application was a continuation-in-part of the '710 Application.

76.     Richard L. Gregg verified as true and correct under penalty of perjury Prism's supplemental response to RIM's Interrogatory No. 8, which stated:

> While Prism's initial response to this interrogatory made reference exclusively to the `416 patent, the facts recited therein apply with equal force to the asserted claims of the '288 patent. Accordingly, the inventions embodied within the asserted claims of the '288 patent were conceived and reduced to practice by Messrs. Greg, Giri and Goeke as detailed in Prism's initial response to this interrogatory.

77.     Prism's responses to RIM's Interrogatory No. 8 made clear that Sandeep Giri and Timothy Goeke materially contributed to the conception and reduction to practice of both the '416 patent and the '288 patent.

**Defendant Nuance, Inc.'s Answer and Counterclaims - Page 14 of 34**

78.     But despite his subjective belief that Messrs. Giri and Goeke were co-inventors of the invention purportedly described in the `638 Application, Mr. Gregg materially misrepresented the inventorship of the `638 Application by signing a document filed with the Patent Office stating that he was the "original, first, and sole inventor" of the invention purportedly described in the `638 Application,.

79.     On May 17, 2005, almost three years after the '638 Application was filed, Timothy Goeke signed an agreement with Prism Technologies, LLC, that purported to assign his right, title, and interest in the purported invention of the `638 Application to Prism Technologies LLC.

80.     On June 28, 2005, almost three years after the '638 Application was filed, Sandeep Giri signed the same agreement with Prism Technologies, LLC, that purported to assign his right, title, and interest in the purported invention of the `638 Application to Prism Technologies LLC.

81.     On March 3, 2006, while the `638 Application was before the Patent Office, Prism Technologies LLC submitted to that office a "Request for Correction of Inventorship Under 37 C.F.R. § 1.48(c)" ("the March 3, 2006 Request").  This request stated, "The claims of the above-identified application have been amended to include previously unclaimed but disclosed subject matter. Therefore, the inventors of the amended subject matter must be added to the current inventorship."  The request was signed by Thomas H. Martin, attorney for Prism Technologies LLC.

82.     But none of the claim amendments submitted after the March 3, 2006 Request included previously unclaimed but disclosed subject matter.

83.     No claim amendments were made during the prosecution of the '638 Application that necessitated changing inventorship or adding on new, previously undisclosed inventors.

84.     Prism Technologies LLC's March 3, 2006 Request included a copy of the assignment agreement wherein Sandeep Giri and Timothy C. Goeke assigned their entire right, title, and interest in the invention in the `638 Application to Prism Technologies LLC.

85.     The inventorship claims of Mr. Gregg were knowingly made by Mr. Gregg during the prosecution of the `638 Application.

86.     The inventorship claim of Mr. Gregg made on August 29, 2002 was material to the prosecution of the `288 Patent.[1]

87.     Richard L. Gregg, a named inventor on the `288 Patent, knowingly made materially false representations to the US Patent and Trademark Office that he was the sole inventor when he signed the Gregg Declaration on August 29, 2002 concerning the material issue of inventorship, did so with a specific intent to deceive the USPTO, and therefore committed inequitable conduct with respect to the `288 Patent and the `638 Application.

88.     Nuance explicitly reserves the right to supplement the facts herein with respect to Nuance's defense and counterclaim of unenforceability due to inequitable conduct based on information learned during discovery in this action.

---

[1] "As a critical requirement for obtaining a patent, inventorship is material. *See, e.g.,* 35 U.S.C. § 102(f) (1994) ("A person shall be entitled to a patent unless ... he himself did not invent the subject matter sought to be patented."); 35 U.S.C. § 116 ("When an invention is made by two or more persons jointly, they shall apply for a patent jointly."). Examiners are required to reject applications under 35 U.S.C. § 102(f) on the basis of improper inventorship. *See* Manual of Patent Examining Procedure § 2137.01 (hereinafter "MPEP"). Accordingly, the Manual of Patent Examining Procedure details the "rules" of inventorship to be used by examiners, *see id.,* and specifically notes that information about inventorship is material under 37 C.F.R. § 1.56, *see* MPEP § 2001.06(c) (inventorship disputes are material information); MPEP § 2004 (suggesting that applicants carefully consider inventorship in the duty to disclose context)." *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.,* 225 F.3d 1315, 1321 (Fed. Cir. 2000).

## COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendant and Counterclaimant Nuance alleges the following counterclaims against Prism as follows:

## THE PARTIES

1.      Nuance is a Delaware Corporation with its principal place of business at with its principal place of business at 1 wayside Road, Burlington, Massachusetts 01803.

2.      Upon information and belief, Prism is a Nebraska limited liability company with its principal place of business at 2323 S. 171st Street, Suite 106, Omaha, Nebraska 68130.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over these Counterclaims under 28 U.S.C. §§ 1331, 1338(a), and 2201.

4.      Venue and jurisdiction are proper within this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b). Venue and jurisdiction are proper within this District because, inter alia, Prism has sued Nuance for infringement of the '288 patent in this court.

## GENERAL ALLEGATIONS

5.      Prism purports to own and have the right to enforce the '288 patent.

6.      Prism sued Nuance in this Court for infringement of the '288 patent.

7.      Nuance denies that it infringes or has infringed any valid and enforceable claim of the '288 patent. Nuance further asserts that the claims of the '288 patent are invalid and/or unenforceable.

8.      Based on the foregoing, there is an actual, immediate, and justiciable controversy between Prism and Nuance regarding the validity, enforceability, and infringement of the '288 patent.

## FIRST COUNTERCLAIM

### (Declaratory Judgment of Non-Infringement of the '288 Patent)

9.      Nuance repeats and re-alleges paragraphs 1-8 of these Counterclaims as if fully set forth herein.

10.     Prism previously filed a patent infringement action (the "RIM action") against at least Research in Motion, Ltd, in this Court, on the same patent, the '288 patent. *See* 8:08-cv-537 (D. Neb.)

11.     In the RIM action, Prism proposed to construe the claim term "access key" in claims 117-187 of the '288 patent and "hardware key" in claims 1-116 of the '288 patent as an "external hardware device or object from which a digital identification can be generated, derived or read."

12.     Prism filed at least two briefs with this Court in support of its proposed claim construction of "access key" and "hardware key."

13.     Moreover, Prism previously asserted U.S. Patent No. 6,516,416, (the "'416 patent") against several defendants, including VeriSign Inc., in the District of Delaware (the "VeriSign action").   *See* Civil Action No. 05-214-JJF (D. Del.).

14.     A certificate of correction issued by the U.S Patent and Trademark Office purports to claim the application that led to the '288 patent as a continuation-in-part of the earlier-filed application that led to the '416 patent. *See* Exh. B to Prism's Complaint, (Doc. # 1).

15.     In the VeriSign action, the Delaware court held that the claim term "hardware key" of the claims of the '416 patent is required to be an "external hardware device." The Court further stated that it "declines to adopt Plaintiff's proposal that the key can be built into the computer." *Prism Techs. v. VeriSign et al.*, 512 F. Supp. 2d, 174, 188 (D. Del. 2007).

16.     Prism understands that the terms "hardware key" and "access key" refer to a hardware device that is external to the "client computer device," as the quoted terms are used in the claims of the '288 patent.

17.     In its Complaint, Prism asserts that Nuance infringes the '288 patent "by making, using, offering to sell, and/or selling authentication systems and methods for controlling access to protected computer resources associated with various Nuance software products (including, without limitation, Dragon products)" (the "Accused Systems and Methods").

18.     Prism has no factual basis for a good-faith belief that Nuance makes, uses, offers to sell, or sells any external hardware device used in connection with the Accused Systems and Methods.

19.     Prism has no factual basis for a good-faith belief that use of Dragon products or any other Nuance software products includes or requires any "external hardware device or object from which a digital identification can be generated, derived or read."

20.     Prism has no factual basis for a good-faith belief that use of the Accused Systems and Methods includes or requires any hardware device or object that is external to the client computer running the Nuance software.

21.     The Accused Systems and Methods of Nuance do not literally infringe any claim of the '288 patent under the claim construction that Prism previously proposed in the RIM action.

22.     Prism has no factual basis for a good-faith belief that Nuance induces others to make, use, offer to sell, or sell any external hardware device for use in connection with the Accused Systems and Methods.

23.     Nuance does not induce infringement of any claim of the '288 patent under the claim construction that Prism previously proposed in the RIM action.

24.     All claims of the '288 patent require a "client computer device."  In the RIM action, Prism proposed that this term be construed as "a programmable electronic device capable of storing and accessing data."

25.     Prism has no factual basis for a good-faith belief that Nuance makes, sells, or offers to sell a programmable electronic device capable of storing and accessing data.

26.     Nuance does not make, sell, or offer to sell a "client computer device" as that term is used in the claims of the '288 patent.

27.     Nuance does not and has not infringed any valid and enforceable claim of the '288 patent, whether directly or indirectly, literally or by the doctrine of equivalents.

28.     Prism is precluded under the doctrine of estoppel, including but not limited to the doctrine of prosecution history estoppel, from asserting or construing the claims of the '288 patent in a way that would read on any product or service made, used, sold, or offered for sale by Nuance.

## SECOND COUNTERCLAIM

### (Declaratory Judgment of Invalidity of the '288 Patent)

29.     Nuance repeats and re-alleges paragraphs 1-10 of these Counterclaims as if fully set forth herein.

30.     Each and every claim of the '288 patent is invalid for failure to comply with one or more requirements for patentability under the patent laws, including, but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

## THIRD COUNTERCLAIM

### (Declaratory Judgment of Unenforceability of the '288 Patent)

31.     Nuance repeats and re-alleges paragraphs 1-10 of these Counterclaims as if fully set forth herein.

32.     Richard L. Gregg, Sandeep Giri, and Timothy C. Goeke, the named inventors of the `288 Patent, were employed by Prism Resources, Inc. at the time in which the application for U.S. Pat. No. 6,516,416 ("the `416 Patent") was filed on June 11, 1997.

33.     The `288 Patent issued from Application No. 10/230,638 ("the `638 Application").

34.    The `416 Patent issued from Application No. 08/872,710 ("the `710 Application").

35.    Richard L. Gregg has been an officer of Prism Resources, Inc. since its inception.

36.    Richard L. Gregg has been an officer of Plaintiff Prism Technologies, LLC since its inception.

37.    On information and belief, Prism Technologies LLC, Plaintiff in this action, is the assignee of all right, title, and interest in the `638 Application.  Such assignment took place while the `638 Application was pending before the US Patent and Trademark Office.

38.    Each of Prism Technologies LLC, Richard L. Gregg, Sandeep Giri, and Timothy C. Goeke was aware of and possessed a duty to disclose material prior art known to each of them during the prosecution of the `638 Application, and to communicate truthfully regarding the inventorship of the `638 Application.

39.    Prism contends that the `288 Patent is a continuation-in-part of the `710 Application, which issued as the `416 Patent, and that the `416 Patent is a parent of the `288 Patent.

40.    Under 37 C.F.R. § 1.56 (e), for a continuation-in-part, "the duty under this section includes the duty to disclose to the Office all information known to the person to be material to patentability, as defined in paragraph (b) of this section, which became available between the filing date of the prior application and the national or PCT international filing date of the continuation-in-part application."

41.     The `638 Application that issued as the `288 Patent was filed on August 29, 2002.

42.     The `638 Application was pending before the US Patent and Trademark Office from its filing date of August 29, 2002 until it issued as the `288 Patent on October 30, 2007.

**Prism's Concealment of the DTN Prototype and ISA System**

43.     As part of the RIM action, Prism also submitted detailed interrogatory responses (hereinafter "RIM Interrogatory Responses") propounded by RIM.

44.     The RIM Interrogatory Responses contained Prism's response to RIM's Interrogatory No. 8, which asked:

> Describe in detail the date and circumstances of the conception and reduction to practice of the alleged inventions of the asserted claims in United States Patent No. 7,290,288, including identification of all person(s) involved in the conception and reduction to practice of the alleged inventions.

45.     Prism's response to RIM's Interrogatory No. 8, served on July 13, 2009, stated in part:

> Starting around March 1996, Richard L. Gregg began the process that led to the conception of the subject matter of United States Patent No. 6,516,416 ("the '416 patent") when a potential customer, Data Transmission Network Corp. (DTN), asked Mr. Gregg if he could develop a system using the Internet that would replace DTN's existing satellite-based transmission network. Upon undertaking that challenge, Mr. Gregg conceived of the '416 patented invention and directed its development and approved the software design and system architecture as well as managed the design project and performed system tests. The subject matter of the '416 patent was described in a Functional Specification no later than May 6, 1996. Sandeep Giri and Timothy C. Goeke participated in the development of the system along with Mr. Gregg and, under Mr. Gregg's supervision, coded the software for the project. In July 1996, Prism performed a confidential demonstration of the prototype system for DTN personnel.

> Richard L. Gregg performed the demonstration at DTN's offices, while Sandeep Giri and Timothy C. Goeke managed the computer servers at Prism Resources. The prototype system and its demonstration to DTN constitutes an actual reduction to practice of the invention defined by the claims of the '416 patent.

46.     Prism's supplemental response to RIM's Interrogatory No. 8, served on October 23, 2009, further stated:

> While Prism's initial response to this interrogatory made reference exclusively to the `416 patent, the facts recited therein apply with equal force to the asserted claims of the '288 patent. Accordingly, the inventions embodied within the asserted claims of the '288 patent were conceived and reduced to practice by Messrs. Greg, Giri and Goeke as detailed in Prism's initial response to this interrogatory.

47.     The entirety of Prism's supplemental response to RIM's Interrogatory No. 8 was verified under penalty of perjury as true and correct by Richard L. Gregg, the first named inventor of the '288 patent.

48.     The RIM Interrogatory Responses further contained Prism's response to RIM's Interrogatory No. 6 which asked:

> Describe in detail the date and circumstances of the earliest disclosure, sale, or offer for sale to a third party of all alleged inventions disclosed in United States Patent No. 7,290,288, including identification of the third party to which the invention was disclosed, sold, or offered for sale.

49.     Prism's Supplemental Response to RIM's Interrogatory No. 6, served on October 23, 2009 stated in part:

> In July of 1996, Prism performed a confidential demonstration of a prototype system for Data Transmission Network Corporation ("DTN"). To the best of Mr. Gregg's recollection, the DTN personnel present at that demonstration were Robert Herman, Chet Slump, Jay Froshiser and Scott Fleck. Richard L. Gregg performed the confidential demonstration at DTN's offices, while Sandeep Giri and

Timothy C. Goeke managed the computer servers at Prism Resources, 2328 Bob Boozer Drive, Omaha, Nebraska 68130-2558. The confidential demonstration which Prism performed for DTN in July of 1996 was the first instance in which Prism used the inventions embodied within at least some of the asserted claims of the '288 patent in the presence of a third party.

The first offer for sale of a commercial embodiment of the asserted claims of the '288 patent was to American Business Information, Inc. ("ABI") during November of 1996. No public disclosure, public use or offer to sell any invention embodied within the asserted claims of the '288 patent was made prior to the June 11, 1996 critical date of the asserted claims of the `288 patent.

50.     Prism's Supplemental Response to RIM's Interrogatory No. 6 was verified as true and correct under penalty of perjury by Richard L. Gregg.

51.     Prism's Second Supplemental Response to RIM's Interrogatory No. 6, served on February 16, 2010, further stated:

The November 1996 offer for sale of the Internet Subscription Access product was the first offer for sale of the inventions claimed in claims 1-3, 5-21, 23-27, 29-36, 38-54, 56-64, 66- 93, 95-134, 136, 138-140, 143-166, 168-170, 273-175 and 178-187. There was no date of a first offer for sale for the remainder of the inventions claimed in the '288 patent.

52.     The ISA system and commercial embodiments developed for American Business Information, Inc., Securities America, Inc., and Construction Network Services, Inc. were offered for sale in the United States several years before the `638 Application was filed.

53.     Richard L. Gregg, Timothy C. Goeke, Sandeep Giri, and Prism failed to disclose to the US Patent and Trademark Office ("USPTO") the prototype system demonstrated to DTN, although each and every named inventor, Messrs. Gregg, Goeke, and Giri, participated in the development and demonstration of the prototype system prior to the filing of the `638 Application, and all were aware of it during the prosecution of the `638 Application.

54.    Neither Richard L. Gregg nor Prism disclosed the commercial embodiments developed for American Business Information, Inc., Securities America, Inc., or Construction Network Services, Inc., although Prism and Mr. Gregg were aware of these embodiments during the prosecution of the `638 Application and believed that they embodied both the `288 Patent claims and the purportedly related `416 Patent claims.

55.    Information about any embodiment of the claims of the `288 Patent that was on sale before the date of the '638 Application, and particularly years before that date, is information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow the `638 Application, and therefore material to the prosecution of the `638 Application.

56.    Throughout the prosecution of the '638 Application (which led to the '288 patent), Prism sought to claim that the '638 Application was a continuation-in-part of the '710 Application (which led to the '416 patent).

57.    Information about any embodiment of the claims of the `416 Patent (which Prism claimed to the USPTO was related to the `288 Patent) that was on sale before the date of the '638 Application is information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow the `638 Application, and therefore material to the prosecution of the `638 Application.

58.    Prism itself has argued that the prototype system and its demonstration to DTN constituted conception and actual reduction to practice of the inventions claimed by the '288 patent.

59.     Information about any prototype or commercial embodiment that arose more than five years prior to the filing of the `638 Application, that the applicants themselves assert practice claims of the `288 Patent, are information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow the Application No. 10/230,638, and therefore material to the prosecution of the `638 Application.

60.     Information about the DTN prototype and commercial products prepared for American Business Information, Inc., Securities America, Inc., and Construction Network Services, Inc. asserted by applicants as embodying claims of the '288 patent and the allegedly related '416 patent was withheld by the applicants from the US Patent and Trademark Office.

61.     The withheld information about the DTN prototype and three commercial products asserted by applicants as embodying the claims of the `288 Patent and supposedly related `416 Patent was not cumulative of the prior art that was before the US Patent and Trademark Office, and it establishes a prima facie case of unpatentability of at least one claim of the `638 Application by compelling a conclusion that the claim is unpatentable under the preponderance of evidence burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability; since it allegedly includes the collective efforts of the inventors of the `288 Patent which were not before the US Patent and Trademark Office in any other art.

**Material Misrepresentations Concerning Inventorship**

62.     A "Declaration and Power of Attorney" was submitted with the `638 Application, listing Richard L. Gregg as the sole inventor.

63.     The `638 Application included a "Declaration and Power of Attorney" signed by Richard L. Gregg on August 29, 2002 ("the Gregg Declaration").

64.     The Gregg Declaration stated "[t]hat I verily believe I am the original, first and sole inventor (if only one name is listed below)."  There was only one name listed below as an inventor on the Gregg Declaration.  That one name was Richard L. Gregg.

65.     The Gregg Declaration further stated "[t]hat I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, § 1.56(a)."  The Gregg Declaration further stated "[t]hat all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true" and "that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon."

66.     Richard L. Gregg, Sandeep Giri, and Timothy C. Goeke were all named as inventors of the '416 patent that issued out of the '710 Application.

67.     At the time of filing of the '638 Application, Richard L. Gregg sought to claim that the '638 Application was a continuation-in-part of the '710 Application.

68.     Richard L. Gregg verified as true and correct under penalty of perjury Prism's supplemental response to RIM's Interrogatory No. 8, which stated:

> While Prism's initial response to this interrogatory made reference exclusively to the `416 patent, the facts recited therein apply with

> equal force to the asserted claims of the '288 patent. Accordingly, the inventions embodied within the asserted claims of the '288 patent were conceived and reduced to practice by Messrs. Greg, Giri and Goeke as detailed in Prism's initial response to this interrogatory.

69.     Prism's responses to RIM's Interrogatory No. 8 made clear that Sandeep Giri and Timothy Goeke materially contributed to the conception and reduction to practice of both the '416 patent and the '288 patent.

70.     But despite his subjective belief that Messrs. Giri and Goeke were co-inventors of the invention purportedly described in the `638 Application, Mr. Gregg materially misrepresented the inventorship of the `638 Application by signing a document filed with the Patent Office stating that he was the "original, first, and sole inventor" of the invention purportedly described in the `638 Application,.

71.     On May 17, 2005, almost three years after the '638 Application was filed, Timothy Goeke signed an agreement with Prism Technologies, LLC, that purported to assign his right, title, and interest in the purported invention of the `638 Application to Prism Technologies LLC.

72.     On June 28, 2005, almost three years after the '638 Application was filed, Sandeep Giri signed the same agreement with Prism Technologies, LLC, that purported to assign his right, title, and interest in the purported invention of the `638 Application to Prism Technologies LLC.

73.     On March 3, 2006, while the `638 Application was before the Patent Office, Prism Technologies LLC submitted to that office a "Request for Correction of Inventorship Under 37 C.F.R. § 1.48(c)" ("the March 3, 2006 Request").  This request stated, "The claims of

the above-identified application have been amended to include previously unclaimed but disclosed subject matter. Therefore, the inventors of the amended subject matter must be added to the current inventorship." The request was signed by Thomas H. Martin, attorney for Prism Technologies LLC.

74.    But none of the claim amendments submitted after the March 3, 2006 Request included previously unclaimed but disclosed subject matter.

75.    No claim amendments were made during the prosecution of the '638 Application that necessitated changing inventorship or adding on new, previously undisclosed inventors.

76.    Prism Technologies LLC's March 3, 2006 Request included a copy of the assignment agreement wherein Sandeep Giri and Timothy C. Goeke assigned their entire right, title, and interest in the invention in the `638 Application to Prism Technologies LLC.

77.    The inventorship claims of Mr. Gregg were knowingly made by Mr. Gregg during the prosecution of the `638 Application.

78.    The inventorship claim of Mr. Gregg made on August 29, 2002 was material to the prosecution of the `288 Patent.[2]

79.    Richard L. Gregg, a named inventor on the `288 Patent, knowingly made materially false representations to the US Patent and Trademark Office that he was the sole

---

[2] "As a critical requirement for obtaining a patent, inventorship is material. *See, e.g.,* 35 U.S.C. § 102(f) (1994) ("A person shall be entitled to a patent unless ... he himself did not invent the subject matter sought to be patented."); 35 U.S.C. § 116 ("When an invention is made by two or more persons jointly, they shall apply for a patent jointly."). Examiners are required to reject applications under 35 U.S.C. § 102(f) on the basis of improper inventorship. *See* Manual of Patent Examining Procedure § 2137.01 (hereinafter "MPEP"). Accordingly, the Manual of Patent Examining Procedure details the "rules" of inventorship to be used by examiners, *see id.,* and specifically notes that information about inventorship is material under 37 C.F.R. § 1.56, *see* MPEP § 2001.06(c) (inventorship disputes are material information); MPEP § 2004 (suggesting that applicants carefully consider inventorship in the duty to disclose context)." *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.,* 225 F.3d 1315, 1321 (Fed. Cir. 2000).

inventor when he signed the Gregg Declaration on August 29, 2002 concerning the material issue of inventorship, did so with a specific intent to deceive the USPTO, and therefore committed inequitable conduct with respect to the `288 Patent and the `638 Application.

80.     Nuance explicitly reserves the right to supplement the facts herein with respect to Nuance's defense and counterclaim of unenforceability due to inequitable conduct based on information learned during discovery in this action.

## ADDITIONAL COUNTERCLAIMS

81.     Nuance reserves the right to assert additional counterclaims as they become known through further investigation and discovery.

## PRAYER FOR RELIEF

WHEREFORE, Nuance respectfully requests that this Court enter judgment in its favor and against Prism and grant the following relief:

A.      A declaration that Nuance does not infringe, whether directly or indirectly, literally or by the doctrine of equivalents, any valid and enforceable claim of the '288 patent;

B.      A declaration that the claims of the '288 patent are invalid and/or unenforceable;

C.      Dismissal of all of Prism's claims against Nuance in their entirety and with prejudice;

D.      A declaration that Prism take nothing by way of its complaint against Nuance;

E.      An order denying any and all of Prism's requests for injunctive relief against Nuance;

F.      An order denying any and all of Prism's requests for equitable relief against Nuance;

G.      An order awarding Nuance its costs pursuant to 35 U.S.C. § 284 and/or Rule 54(d) of the Federal Rules of Civil Procedure;

H.      An order finding this an exceptional case under 35 U.S.C. § 285, and awarding Nuance its costs and fees in this action, including attorneys' fees, and pre-judgment interest thereon; and

I.      An order awarding Nuance such further relief as the Court may deem appropriate under the circumstances.

## **JURY TRIAL DEMAND**

Nuance hereby demands a trial by jury on all issues triable by a jury as of right in this action.

Dated: September 7, 2010

/s/ Scott Breedlove
Scott Breedlove (pro hac vice)
Giriraj Pathmanaban (pro hac vice)
Vinson & Elkins LLP
2001 Ross Ave. – Suite 3700
Dallas, TX 75201
Tel: 214-220-7700
Fax:  214.220.7716
E-mail: sbreedlove@velaw.com
E-mail: gpathmanaban@velaw.com

Richard P. Jeffries, #20089
CLINE WILLIAMS WRIGHT,
JOHNSON & OLDFATHER, L.L.P.
One Pacific Place
1125 South 103rd Street, Suite 320
Omaha, Nebraska 68124
Telephone: (402) 397-1700
Fax: (402) 397-1806
E-mail: rickjeffries@clinewilliams.com

Attorneys for Defendant NUANCE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2010, I electronically filed the foregoing document with the U.S. District Court, District of Nebraska using the CM/ECF system, which sent notification of such filing to all counsel of record who have registered with the CM/ECF system.

s/ Scott Breedlove
Scott Breedlove
