IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PRISM TECHNOLOGIES, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>ADOBE SYSTEMS, INCORPORATED;<br>AUTODESK, INC.; McAFEE, INC.,<br>NATIONAL INSTRUMENTS<br>CORPORATION; SAGE SOFTWARE,<br>INC.; SYMANTEC CORPORATION;<br>THE MATHWORKS, INC.; and<br>TREND MICRO INCORPORATED,<br><br>  Defendants. | 8:10CV220<br><br>MEMORANDUM AND ORDER |

## I. INTRODUCTION

This matter is before the Court to construe two patent claim terms pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). Plaintiff Prism Technologies, LLC ("Prism") has alleged infringement of its patent, U.S. Patent No. 7,290,288 ("'288 patent"; Filing No. 1-1), by defendants Adobe Systems, Inc., Autodesk, Inc., McAfee, Inc., National Instruments Corp., Sage Software, Inc., Symantec Corp., The Mathworks, Inc., and Trend Micro, Inc. (collectively, "defendants"). On December 1, 2010, the Court ordered a briefing schedule to address the construction of the claim terms "hardware key" and "access key,"[1] as used in the '288 patent (Filing No. 159). On April 11, 2011,

---

[1] The parties agree "hardware key" and "access key" have the same meaning within the context of the '288 patent. For ease of reference, the Court hereafter will refer only to "hardware key."

the Court conducted a *Markman* hearing for the purpose of construing "hardware key"[2] (Filing No. 185).  After reviewing the '288 patent, briefs, evidentiary submissions, oral arguments, and the applicable law, the Court construes "hardware key" to mean:

> An external hardware device or object from which the predetermined digital identification can be read.

## II.  BACKGROUND

The '288 patent, entitled "Method and System for Controlling Access, by an Authentication Server, to Protected Computer Resources Provided via an Internet Protocol Network," issued on October 30, 2007, from an application filed August 29, 2002.  Stated generally, the '288 patent describes a security system for computer networks through a process known as two-factor authentication.  Two-factor authentication provides security for electronic content by requiring a computer user to input identifying information known to the user (e.g., username and password) and to attach a hardware key (e.g., CD-ROM, magnetic card, smart card, biometric reader) to the user's computer identifying the user to the computer system containing the protected content.  Once the computer system containing the

---

[2] The parties dispute the meaning of other claim terms in the '288 patent, but it is possible the Court's construction of "hardware key" may be dispositive of the case, making it unnecessary to construe the other disputed terms.

protected content authenticates the user's identity, the system grants the user access to the protected content.

Prism contends the '288 patent is a continuation-in-part of another Prism patent, U.S. Patent No. 6,516,416 ("'416 patent"), entitled "Subscription Access System for Use with an Untrusted Network," issued on February 4, 2003, from an application filed June 11, 1997 (Filing No. 173-3, Defendants' Ex. B).  This would make the '416 patent a "parent patent" and the '288 patent a "child patent."

The '416 patent also uses the term "hardware key."  In previous litigation initiated in 2005 in the District of Delaware between Prism and other defendants ("Delaware case"), the district court construed the term "hardware key"[3] in the context of the '416 patent.  The district court construed "hardware key" in the Delaware case to mean "external hardware device or object from which the predetermined digital identification can be read" (Filing No. 173-6, Exhibit E (Order ("Delaware Order"), *Prism Techs. LLC v. Verisign, Inc.*, No. 05-214-JJR, Filing No. 440, at 3 (D. Del. Apr. 2, 2007))).  The district court in the Delaware case also construed other terms in the '416 patent.  Prism appealed the district court's claims construction order, which

---

[3] The district court in the Delaware case also construed "access key."  As is the case here, the parties agreed in the Delaware case that "hardware key" and "access key" are synonymous (Delaware Memorandum Opinion, Filing No. 173-5, at 21).

the Federal Circuit affirmed without comment. *Prism Techs. LLC v. Verisign, Inc.*, 263 F. App'x 878 (Fed. Cir. 2008). After the Delaware district court entered its claim construction memorandum and order, Prism disclosed these documents from the Delaware case to the Patent and Trademark Office ("PTO") (Information Disclosure, Filing No. 173-17, Exhibit P, at 2).

In December 2008, Prism filed a cause of action in the District of Nebraska against Research in Motion, Ltd. for infringement of the '288 patent ("RIM case"). The parties in the RIM case identified "hardware key" as one of the terms needing construction. In its claims construction brief, Prism recognized that the '416 patent and '288 patent share many common terms, including "hardware key" (Prism's Claim Construction Brief in RIM Case, Filing No. 173-10, at 10). Prism acknowledged the Delaware case's claims construction decision was "highly relevant" to the '288 patent's construction because Prism had provided a copy of the Delaware case's claims construction decision to the PTO during the prosecution of the '288 patent (*Id.* at 11). Prism proposed in the RIM case "that common terms of the '288 and '416 patents be given the same construction" (*Id.* at 12). Despite this and other similar statements Prism made in its claims construction brief, however, Prism's proposed construction for "hardware key" in the RIM case was not identical to the construction given in the Delaware case. Instead, Prism's

-4-

proposed construction for "hardware key" was "external hardware device or object from which a digital identification can be generated, derived or read" (*Id.* at 14). This Court never construed any of the '288 patent's terms in the RIM case as the parties settled the matter prior to the *Markman* hearing.

Prism brought the current action against defendants on June 8, 2010 (Complaint, Filing No. 1).

### III.  STANDARD OF REVIEW

"[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). In construing a claim term, the Court must give each term its "ordinary and customary meaning, as [it] would be understood by one of ordinary skill in the art in question at the time of the invention." *Intervet, Inc. v. Merial Ltd.*, 617 F.3d 1282, 1287 (Fed. Cir. 2010) (citing *Phillips*, 415 F.3d at 1312-13). While the ordinary meaning of a claim term may be readily apparent to a lay person, often the understanding of a claim term by a person of skill in the art in question is not readily apparent. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

When a claim term's meaning is not readily apparent, courts look to "'those sources available to the public that show what a person of skill in the art would have understood [the

disputed claim term] to mean.'"  *Phillips*, 415 F.3d at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).  Sources available to the public include (1) the claims' words, (2) the patent's specifications, (3) the patent's prosecution history, and (4) extrinsic evidence pertaining to relevant scientific principles, such as a technical term's meaning and the state of the art. *Phillips*, 415 F.3d at 1314; *Innova*, 381 F.3d at 1115; *Vitronic Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The first three categories are known as intrinsic evidence. Because intrinsic evidence provides the "most significant source of the legally operative meaning of disputed claim [terms]," courts should consider intrinsic evidence first when construing claim terms.  *Vitronics*, 90 F.3d at 1582.  By contrast, extrinsic evidence generally is viewed as "less reliable" than intrinsic evidence, though it still can be useful to claim construction. *Phillips*, 415 F.3d at 1318.

Regarding the various types of intrinsic evidence, each can provide different, but important guidance for interpreting a claim term's meaning.  The claims themselves can provide substantial guidance as to a term's meaning, and it is proper to begin claims analysis by looking at the claim language itself. *Phillips*, 415 F.3d at 1314; *Innova*, 381 F.3d at 1115.  Because claim terms are typically used consistently throughout a patent,

-6-

a term's usage in one claim can provide insight to the same term's meaning in another claim. *Id.*

The other intrinsic evidence sources -- the specifications and the prosecution history -- are also important to interpreting a claim term's meaning. The specifications, informed as needed with the prosecution history, provide "the best source for understanding a technical term." *Id.* at 1315. The specifications provide the claimed invention's full and exact description. *Phillips*, 415 F.3d at 1316 (citing 35 U.S.C. § 112). The specifications provide context to the claims and may be used to better understand a claim term's meaning. *Innova*, 381 F.3d at 1116. "In most cases, the best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention." *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004). Often, the specifications are "dispositive" of a disputed term's meaning. *Vitronics*, 90 F.3d at 1582.

The prosecution history is also important to deciphering a claim term's meaning. *Hynix Semiconductor, Inc. v. Rambus, Inc.*, __ F.3d __, Nos. 2009-1299 and 2009-1347, 2011 WL 1815978 (Fed. Cir. May 13, 2011) (citing *Phillips*, 415 F.3d at 1314). The prosecution history includes "the complete record of proceedings before the PTO and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at

-7-

1317. The record before the PTO, in particular, is often "critical[ly] significan[t]" to ascertaining a claim term's meaning. *Vitronics*, 90 F.3d at 1582.

### IV. ANALYSIS

The parties offer similar, but not identical proposed constructions for "hardware key:"

| Prism's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| External hardware device or object from which **[1] a** digital identification can be **[2] generated, derived or read**. | An external hardware device or object from which **[1] the predetermined** digital identification can be **[2] read**. |

(Prism's Claim Construction Brief, Filing No. 178, at 3 (bracketed numbers and emphasis added); Defendants' Claim Construction Brief, Filing No. 172, at 15 (bracketed numbers and emphasis added)). For ease of reference, the Court will reference the disputed text denoted by "[1]" as the "predetermined issue" and the disputed text denoted by "[2]" as the "read issue." Defendants' proposed construction is identical to the Delaware district court's construction of "hardware key." Prism's proposed construction is identical to its proposed construction in the RIM case.

Defendants argue their proposed construction of "hardware key" is better supported because it is identical to the Delaware district court's construction of the same term in the

-8-

'416 patent, which is a parent patent to the '288 patent. Defendants also contend their proposed construction is consistent with the '288 patent's intrinsic evidence. Defendants argue the "digital identification" referenced in the "hardware key" construction must be "predetermined" because the authentication server protecting the electronic content cannot authenticate a client computer user's identity unless it makes a comparison between the hardware key's digital identification and the stored authorization data from the clearinghouse database. Defendants also take issue with Prism's proposed construction because the digital identification on the hardware key must be "read," and Prism's proposed construction allows for possibilities where the digital identification is not "read" from the hardware key.

Prism argues its proposed construction more closely follows the '288 patent's claim language and argues the common terms of the '288 and '416 patent need not be identically construed because they are different patents. Prism points out that the '288 patent's claims and specifications do not use the word "predetermined" when referencing the hardware key's digital identification. Further, Prism argues its proposed construction of "generated, derived or read" is proper because "generated" and "derived" are words used in the patent claims.

The Court finds defendants' proposed construction is supported and adopts that construction.

-9-

**A.   Predetermined Issue**

The inclusion of "predetermined" in the construction of "hardware key" is proper because it is supported by the '288 patent's claims, specifications, and prosecution history. The '288 patent's claims contemplate a comparison between the hardware key's digital identification and the authorization data stored on the clearinghouse database. *See* Claims 1, 31, 62, 87, 116, 117, 150, 185, 186, 187. If the hardware key's digital identification is not predetermined, then the authentication server would not be able to compare the hardware key's digital identification and the authorization data stored on the clearinghouse database. Without such a comparison, authentication of the user's identity would not be possible. Thus, the '288 patent's claims support a conclusion that the hardware key's digital identification must be "predetermined."

Similarly, the '288 patent's specification support the inclusion of "predetermined." Like the claims, the specifications make repeated references to comparisons made between the hardware key's digital identification and the stored authorization information on the clearinghouse database. For example, the specifications state: "[T]he account holder authentication server accesses the account holder's information from its database and authenticates the login parameters. In using two or three factor authentication, this authentication

involves the *comparison* of the digital ID." '288 Patent at 17:12-16 (emphasis added).  Also, in describing two-factor authentication with a hardware key, the '288 patent states: "[T]wo factor authentication could be provided by some other physical device, such as a credit card, a key, an ATM card, or the like which is *known to have been assigned and given to a specific person*."  *Id.* at 19:50-53 (emphasis added).  These examples and others found in the specifications support a conclusion that the hardware key's digital identification must be "predetermined."  *See also id.* at 2:9-13, 13:37-43. 14:28-38, 16:60-67, 22:6-23.

        The prosecution history also supports the inclusion of "predetermined" in the construction of "hardware key."  Prism contends the '288 patent is a continuation-in-part of the previous '416 patent.  During the prosecution of the '288 patent, Prism provided the PTO with copies of the Delaware district court's claims construction memorandum and order, thus making those items part of the '288 patent's prosecution history.  Prior constructions of identical claim terms in related patents are highly relevant to construing claim terms.  *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005) ("Because NTP's patents all derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents."); *Omega Eng'g, Inc. v.*

*Raytek Corp.*, 334 F.3d 1314, 1333 (Fed. Cir. 2003) ("[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning."); *Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1326 (Fed. Cir. 2001) ("Since the structure and wording of the '752 and '822 patent claims is similar to the structure and wording of the '050 and '023 patent claims, we see no reason to construe the claims of the former two patents more narrowly than those of the latter two patents."); *Jonsson v. Stanley Works*, 903 F.2d 812, 818 (Fed. Cir. 1990) ("Hence, the prosecution history of the '251 patent and the construction of the term 'diffuse light' contained in that patent, is relevant to an understanding of 'diffuse light' as that term is used in the '912 patent."). Because "hardware key" was construed in the '288 patent's parent (i.e., the '416 patent) to include a "predetermined" digital identification, the prosecution history of the '288 patent supports a conclusion that the construction of "hardware key" should include "predetermined."

      The '288 patent's intrinsic evidence supports including "predetermined" in the construction of "hardware key." A person or ordinary skill in the art would understand "hardware key" to include "predetermined," and the Court will construe the claim term as such.

**B.   Read Issue**

Regarding the read issue, the Court finds Prism's proposed construction is improper and defendants' proposed construction better explains how a person of ordinary skill in the art would understand "hardware key" to mean.  Prism's proposed construction includes the terms "generate" and "derive," which are terms found in the '288 patent's claims.  *See* '288 Patent, Claims 1, 31, 62, 76, 87, and 116 (generating); *Id.*, Claims 117, 150, 166, 167, 169, 171, 176, 185, 186, and 187 (deriving).  However, Prism's proposed construction of "generated, derived <u>or</u> read" does not accurately portray the '288 patent's invention.  Prism's inclusion of "or" in its proposed construction implies there are situations when the hardware key's digital identification may be "generated" or "derived" but not "read."  This cannot be the case because the intrinsic evidence of the '288 patent clearly requires the hardware key's digital identification to be "read."

Through identifying a user's identity with two-factor authentication, a comparison is made between the hardware key's digital identification and the authorization data stored on the clearinghouse database.  In order to make the authentication comparison, the digital identification must be *read* from the hardware key.  The structure of the '288 patent's claims imply that the hardware key's digital identification must be "read" in

order to make the authentication comparison.  The specifications, which use the term "read" in relation to the hardware key's digital identification, also support the conclusion that the digital identification must be "read."  *Id.* at 5:44, 7:52, 14:31, 16:65, and 18:35.

The prosecution history provides further support for a "read" requirement.  Despite the '416 patent's use of the term "generate" in its claims, the Delaware district court construed "hardware key" to mean that the digital identification is "read."  *Compare* '416 patent, Claims 1 and 13 (using "generate" in the context of "hardware key") *with* Delaware Order at 3 ("'Hardware Key' is construed to mean 'external hardware device from which the predetermined digital identification can be *read*.'").  Further, given that the '288 patent and '416 patent are related patents sharing identical terms, the Delaware district court's use of "read" in its construction of "hardware key" lends substantial support to making an identical construction in this case.  *NTP*, 418 F.3d at 1293; *Omega Eng'g*, 334 F.3d at 1333; *Dayco Prods.*, 258 F.3d at 1326; *Jonsson*, 903 F.2d at 818.  Because of these intrinsic sources, the Court rejects Prism's proposed construction regarding the read issue and will not include "generated" or "derived" in the construction of "hardware key."

-14-

IT IS ORDERED that "hardware key" and "access key" are construed to mean "An external hardware device or object from which the predetermined digital identification can be read."

DATED this 1st day of June, 2011.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court