IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PRISM TECHNOLOGIES, LLC<br><br>            Plaintiff,<br><br>   v.<br><br>ADOBE SYSTEMS INCORPORATED;<br>AUTODESK, INC; MCAFEE, INC.;<br>NATIONAL INSTRUMENTS CORPORATION;<br>NUANCE COMMUNICATIONS, INC.;<br>QUARK, INC.; THE SAGE GROUP PLC;<br>SAGE SOFTWARE INC.; SYMANTEC<br>CORPORATION; THE MATHWORKS, INC.;<br>and TREND MICRO INCORPORATED,<br><br>            Defendants. | Civil Action No. 8:10-cv-00220-LES-TDT<br><br>**DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION FOR ENTRY OF DEFENDANTS' PROPOSED PROTECTIVE ORDER** |

**I.  INTRODUCTION**

      Defendants have worked hard to reach agreement with Plaintiff Prism Technologies, LLC ("Prism") regarding a protective order governing production of confidential information in this case, and have agreed upon most of the provisions for a protective order.  However, the parties have reached an impasse regarding two issues:  (1) the production of source code, and (2) the logging of privileged documents that relate to this litigation.

Defendants ask that this Court enter the provisions for source code as set forth in their proposed protective order. (Ex.[1] A, ¶ 9.) Defendants' source code is secret and extremely sensitive, since copies are not made available to the public and any inadvertent disclosure could be devastating. Defendants have accordingly drafted provisions under which their source code may be produced for inspection at the offices of counsel for the producing party or an escrow agent, or on a secure networked computer, if the producing party deems such a manner of production to be necessary. Inspection of source code at offices of counsel for the producing party is common practice incorporated, for example, into the model Protective Orders of the Northern District of California and the Eastern District of Texas. Indeed, the stipulated protective order entered by this Court in Prism's previous case against Research in Motion provided for production of source code for inspection at the offices of counsel for the producing party.

Unfortunately, in this case, Prism has refused to agree to *any* manner of production other than ***direct provision of electronic copies of the code to opposing counsel***. Such a manner of production does ***nothing*** to address the special concerns relating to disclosure of source code. It is, moreover, out of line with local rules and court orders providing for inspection of source code in lieu of the production of electronic copies, as well as the general practice of parties to work towards agreement of provisions for inspection.

Defendants also ask that this Court limit the logging of privileged communications relating to this lawsuit and occurring since the filing of the lawsuit. (See Ex. A, ¶ 25). The logging of privileged communications is a traditional mechanism to permit assessment of documents withheld from discovery as privileged. Defendants have worked to provide

---

[1] As used herein, "Ex. [X]" shall refer to an exhibit o the Index of Evidence, Ex. 1, Declaration of Matt Rodgers ("AttorneyDecl.").

2

reasonable limits for the logging of privileged documents relating to this lawsuit – recognizing the indisputable impracticality of logging all communications between the parties and their counsel during the pendency of the case.  Defendants have proposed that communications since the filing of the suit need not be logged.  Prism initially agreed, but then subsequently withdrew that agreement in an effort to force Defendants to agree that Prism's pre-suit communications would not be logged.  Because pre-suit communications concern events and persons that might otherwise be unknown to Defendants, and because the absence of a log of such communications leaves Defendants with *nothing* on which to evaluate Prism's claims of privilege, Defendants cannot agree to such an extensive waiver of the Federal Rules.

Accordingly, and for the reasons set forth below, Defendants respectfully request that the Court enter Defendants' proposed protective order with their proposed provisions, as set forth in sections 9 and 25, for production of source and logging of privileged documents.  (Ex. A.)

## II.  ARGUMENT

### A. Source Code Production

There are two general issues relating to the production of source code.  The first is the manner of production of the source code.  The second involves limitations on paper copies of the source code.

#### 1.  Manner of Production

For companies that develop software, source code is often the most valuable and most sensitive information they possess.  Developing source code requires a substantial investment of time, money, and resources, and may embody years of work by numerous individuals.  For companies like the Defendants, source code is not made available to the public.  Instead, such companies provide executable software that has been compiled from the source code, from

which the underlying source code is not ascertainable. Where, as here, source code is not "easily copied or ascertainable," it has been found to constitute a trade secret. *Linkco, Inc. v. Fujitsu Ltd.*, 230 F.Supp.2d 492, 499 (S.D. N.Y. 2002) ("Computer programs have been found to constitute a trade secret where the source code is not easily copied or ascertainable by inspection of the program.").

The protection of source code is particularly difficult because source code, if misappropriated or inadvertently disclosed, can spread virally in today's internet-based society, with dramatic consequences. Because the value of source code depends, at least in part, on it not being generally known, such disclosure can effectively wipe out the creator's substantial investment. The injury in such a case is truly irreparable.

Because source code is so sensitive, the courts have generally provided for production of source code by inspection or a networked computer, rather than requiring that electronic copies be handed over. The model protective order in the Northern District of California, for example, says: "(c) Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the Producing Party's counsel or another mutually agreed upon location." (Ex. B at ¶ 9(c).) Similarly, Judge Everingham's model protective order, for use in the Eastern District of Texas, states: "Additionally, except as provided in paragraph 10(k) below, the stand-alone computer(s) may only be located at the offices of the producing Party's outside counsel…" (Ex. C at ¶ 10(a)); *see also, Performance Pricing, Inc. v. Google Inc.*, 2009 WL 2832353, C.A. No. 2:07cv432 (E.D. Texas 2009) (granting plaintiff's motion to compel Google to produce source code, and ordering that they meet and confer "so that Google can make the above identified source code available for inspection."). In the District of

Delaware, Judge Robinson's default provisions for production of source code establish procedures for production by inspection at an escrow agent and without any provisions for copying or printing. (Ex. D at ¶ 5.)

Indeed, in districts that have Patent Local Rules, those rules generally provide that the accused infringer "produce *or make available for inspection*" the source code and other technical documents showing the operation of the accused instrumentality. (*See, e.g.,* Ex. E at § 3-4; Ex. F at § 3-4.) Not surprisingly, parties have similarly agreed to such a manner of production. *See, e.g., Jagex Limited v. Impulse Software*, 273 F.R.D. 357 (D. Mass. 2011) ("The parties agree that a protective order is appropriate in this case, particularly to protect source code" and provide for inspection of source code).

Here, Defendants seek a protective order that provides secure options for production of source code, including options of making source code available for inspection by Prism and its experts under controlled conditions. Specifically, Defendants propose that a Producing Party have the option of producing its source code by whichever of the following methods it chooses:

(a) By inspection at the outside counsel's office of the Producing Party;

(b) By remote access via a secured network connection;

(c) Directly to the Receiving Party; or

(d) By inspection at an escrow facility chosen at the Producing Party's sole option.

In this way, Defendants seek to provide mechanisms to ensure the confidentiality of their source while, at the same time, allowing for flexibility in the particular manner of production of any particular code. Such flexibility also accommodates situations where direct production may be acceptable.

Prism has insisted, however, upon a single method for making source code available: namely, ***direct production of electronic files to the Receiving Party's outside counsel***.

While Defendants are willing to retain direct production as an option (see option (c) above), this cannot be the ***required*** option.  Due to the highly sensitive nature of source code, Defendants must have the option for additional, more secure methods of production, such as by inspection at their own outside counsel's office or an escrow facility, or via remote access. These methods minimize the high risk for inadvertent disclosure that is necessarily associated with provision of electronic copies of source code.  Thus, these methods will prevent the enormous harm that could occur if electronic copies of the Defendants' source code were to be advertently or inadvertently disclosed.  Prism does not have a similar concern about its source code, if any, because it does not engage in any software development or sales.

For example, under option (a), source code would be made available for inspection at the offices of the Producing Party's outside counsel.  A Producing Party's outside counsel is an agent for that party and has a strong, vested interest in monitoring review of source code and maintaining its security.  Moreover, at Prism's request, the majority of Defendants have already indicated that they will make their code available at their outside counsels' offices in the San Francisco-Silicon Valley area, which is convenient for Prism's outside counsel, who are located in the same area.  This is a reasonable accommodation of Prism.  *Jagex Limited*, 273 F.R.D. at 359 (ordering production of source code to be made by inspection in an area where counsel of both parties had offices).  The benefits of the safeguard of inspection, at a reasonably convenient location, far outweighs the additional burdens (if any) to Prism.  Indeed, Prism  agreed in other litigation that source code may be produced at the Producing Party's outside counsel's office. (Ex. G (Stipulated Protective Order entered in Prism Technologies LLC v. Research in Motion,

Ltd., et al., United States District Court for the District of Nebraska, Civil Action No. 8:08-CV-537 (Docket. No. 62)).)

Under option (b), source code would be made available by a secure internet connection. By producing source code via remote access, the computer housing the source code does not leave the physical premises of the Producing Party. This allows the Producing Party to exercise control and custody over its code while allowing the Reviewing Party to access the source code from the convenience of where the actual reviewer is located. This also is a reasonable accommodation of Prism. *01 Communique Laboratory, Inc. v. Citrix Systems, Inc.*, 554 F.Supp.2d 762 (N.D. Ohio 2008) (considering the issue of the manner of production of source code, and ordering that the producing party "shall load all of the requested source code onto a dedicated server so that [the receiving party] can access the source code via the internet"). Here again, the benefits of the safeguard of access by a secure internet connection far outweighs the additional burdens (if any) to Prism.

Lastly, under option (d), source code would be made available for inspection at an escrow facility. Such facilities are set up specifically to monitor, maintain, and enforce review of source code, and the providers have extensive experience doing so. For example, source code escrow facilities provide a secure room for the Receiving Party to review code. Such facilities also check identification so that only permitted persons may enter the review room, monitors and logs the reviewers and hours of review, and the facility maintains custody of the source code computer to keep it secure. For these reasons, escrow agents are a commonly used method by the parties for making source code available. (*See, e.g.,* Ex. H (*InNova Patent Licensing, LLC v. 3Com Corp. et al.,* United States District Court for the Eastern District of Texas, C.A. No. 2:10-cv-251 (Docket No. 347)); Ex. I (*Deep Nines, Inc. v. McAfee, Inc*., United States District Court

for the Eastern District of Texas, C.A. No. 9:09-cv-89 (Docket No. 91)).)  To the extent travel to an escrow facility imposes additional burden on the Receiving Party, such burden is justified given the highly sensitive nature of source code and the security provided by the escrow agent.

For the above reasons, Defendants ask the Court to adopt its proposal for production of source code as set forth in section 9 of the Protective Order.

### 2. Printing of Source Code

The parties may need to use excerpts of source code as evidence, for example at deposition or in briefing to the Court.  Defendants have therefore provided a procedure for limited printouts of the source code, as follows:

> After reviewing source code and conducting analysis, the Receiving Party requests printouts of portions of source code from Producing Party.  (See Ex. A, ¶ 9(b)(i).)  Printouts that exceed 15 continuous pages of code and/or 500 pages cumulatively shall be presumed excessive, but if the Receiving Party shows a reasonable need for such volume of printouts, the Producing Party may grant permission to exceed these limits.  (See Ex. A, ¶ 9(b)(ii).)  The Producing Party has a short period to review the excerpts and consider any rationale for requests that are excessive, and may object if they are excessive and not reasonable in nature.  To the extent that it has no objection, the Producing Party numbers, copies, and labels the printouts and provides them to Receiving Party, all within three days.  (*Id.*)

The Defendants' proposed procedure ensures that a limited amount of source code is exposed to the increased risk inherent in production of source code printouts, allows Defendants to object to excessive printing, and provides the Producing Party with a record of the source code that has been printed.  This proposal is far less restrictive what than many courts have ordered.  *See, e.g.,* Ex. D (Judge Robinson's default standard) at ¶ 5 ("Source code may not be printed or copied without the agreement of the producing party or further order of the court.").

Conversely, Prism proposes an unbounded procedure in which it would be permitted to directly print source code without disclosing what source code it is printing and ***without any***

*limits whatsoever*. This would effectively eviscerate the protections of production by inspection. A Defendant would have no way to challenge the appropriateness of Prism's handling of its source code. Moreover, a Defendant would not even be able to track the specific code that has been printed, as Prism would be able to conceal all information not disclosed in connection with expert reports or other filings. A Defendant would be entirely in the dark about which of its most sensitive trade secrets have been removed from the secure environment and are at risk.

For all of these reasons, Defendants ask the Court to adopt their proposal for printing of source code as set forth in section 9(b) of the Protective Order.

### B. Logging of Pre-Suit Privileged Materials

The Federal Rules of Civil Procedure generally require that parties "describe the nature of the documents, communications, or tangible things not produced or disclosed" because they are privileged communications. Fed. R. Civ. P. 26(b)(5)(A). However, parties may agree to limitations as to scope and it is within the discretion of the Court to determine what information must be included in the log. *PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*., 187 F.3d 988, 992 (8th Cir. 1999) ("The tribunal ultimately decides what information must be disclosed on a privileged document log.").

Here, Defendants propose, as is common, that only those communications regarding the conduct of this litigation that occurred before the lawsuit began ("pre-suit communications") need be logged; that is, that communications regarding the conduct of this litigation occurring since the litigation was filed need not be logged. *U.S. v. Bouchard Transp*. 2010 WL 1529248 at *2, C.A. No. 08-CV-4490 (E.D.N.Y.2010) (noting that "privilege logs are commonly limited to documents created before the date litigation was initiated [because] in many situations, it can be assumed that all documents created after charges have been brought or a lawsuit has been

9

filed and withheld on the grounds of privilege were created "because of" that pending litigation."); *Mainstreet Collection, Inc. v. Kirkland's, Inc.* 270 F.R.D. 238, 243 -244 (E.D.N.C.,2010) (the parties agreeing that '[p]rivileged communications and work product of any attorney of record with respect to this litigation that are dated on or after the date of the filing of the original Complaint need not be identified on any privilege log.'").

Prism initially agreed that post-suit communications need not be logged, but objected to logging pre-suit communications on the grounds that they are no different in nature or kind than communications occurring after the filing of the lawsuit. When Defendants refused to agree to the latter provision, Prism backtracked and now maintains that the parties should log all lawsuit-related communications.

Prism's attempt to shield its pre-suit communications from discovery by withdrawing its prior agreement is pure gamesmanship and wholly unreasonable. Prism seeks to coerce Defendants into agreeing that pre-suit communications need not be logged. But such an agreement would exclude from discovery all communications reflecting Prism's evaluations of the Defendants or their products, involvement of other individuals or parties in the decision to bring this lawsuit, and communications reflecting investigation, or the lack thereof, to substantiate this lawsuit. Such communications may or may not be privileged, and Defendants are clearly entitled to assess any claims of privilege over such communications, as Prism now appreciates. They must, accordingly be logged.

Prism's proposal also ignores the burdens and very limited benefits for all parties of logging post-suit communications. Prism has propounded a request for discovery including "any communications between [the Defendant] and any other person or entity, including all named Defendants to this litigation, or their counsel, regarding the PATENT-IN-SUIT, Prism and/or the

10

instant litigation." (*See, e.g.,* Ex. J at Request for Production No. 62.)  Thus, Defendants would be obliged to log all communications between any party and its counsel regarding this litigation.  The volume of such communications is already very large and will soon be immense, and the subject matter of the communications is simply the conduct of this litigation.  Accordingly, Defendants request that the Court enter Defendants' proposal for logging of privileged communications or issue a protective order exempting Defendants from the requirement of logging privileged communications relating to this lawsuit and occurring since the filing of the lawsuit.[2]

## III.  CONCLUSION

For all of these reasons, Defendants ask the Court to enter their proposed protective order, including their provisions for production and handling of source code and for logging of privileged communications as set forth in sections 9 and 25.

Dated:  October 3, 2011                                        Respectfully submitted,

---

[2] Should the Court find that all such communications should be logged, the Defendants respectfully request that, rather than log each individual document, they be permitted to give a categorical description of the privileged documents through counsel declarations providing information concerning the number of documents withheld, the time period encompassed by those documents, and a statement declaring that the documents fall within the attorney-client privilege and/or work product doctrine.

<div style="margin-left: 40%;">

*/s/ Tamara Fraizer*
Frank E. Scherkenbach (pro hac vice)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110
Tel:  (617) 542-5070
Fax:  (617) 542-8906
scherkenbach@fr.com

Kelly C. Hunsaker (pro hac vice)
Tamara Fraizer (pro hac vice)
Jonathan J. Lamberson (pro hac vice)
Betty Chen (pro hac vice)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone:  (650) 839-5070
Facsimile:  (650) 839-5071
hunsaker@fr.com
lamberson@fr.com
fraizer@fr.com

Michael T. Hilgers
GOBER HILGERS PLLC
1603 Farnam Street, Suite 3000
Omaha, NE 68102
Telephone: (402) 218-2106
Facsimile:  (877) 437-5755
mhilgers@goberhilgers.com

Attorneys for Defendants
ADOBE SYSTEMS INCORPORATED AND
NATIONAL INSTRUMENTS
CORPORATION

</div>

*/s/ Rudy Y. Kim*
Michael A. Jacobs (pro hac vice)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
mjacobs@mofo.com

Rudy Y. Kim (pro hac vice)
Erika L. Yawger (pro hac vice)
Christopher F. Jeu (pro hac vice)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
rudykim@mofo.com
eyawger@mofo.com
cjeu@mofo.com

John P. Passarelli (SBN 16018)
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, Nebraska  68102
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
john.passarelli@kutakrock.com

Attorneys for Defendants
AUTODESK, INC.

*/s/ Matthew R. Rodgers*
Danny L. Williams (pro hac vice)
Ruben S. Bains (pro hac vice)
Matthew R. Rodgers (pro hac vice)
WILLIAMS, MORGAN & AMERSON, P.C.
10333 Richmond Avenue, Suite 1100
Houston, Texas 77042
Telephone: (713) 934-7000
Facsimile: (713) 934-7011
dwilliams@wmalaw.com
rbains@wmalaw.com
mrodgers@wmalaw.com

John P. Passarelli (SBN 16018)
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, Nebraska  68102
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
john.passarelli@kutakrock.com

Attorneys for Defendants
MCAFEE, INC. and THE MATHWORKS, INC.

        */s/ Lara S. Garner*
Jonathan Singer (pro hac vice)
FISH & RICHARDSON PC
60 South 6th Street, Suite 3200
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile : (612) 288-9696
singer@fr.com

Lara S. Garner (pro hac vice)
FISH & RICHARDSON PC
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-4332
Facsimile: (858) 678-5070
lgarner@fr.com

Michael T. Hilgers
GOBER HILGERS PLLC
1603 Farnam Street, Suite 3000
Omaha, NE 68102
Telephone: (402) 218-2106
Facsimile:  (877) 437-5755
mhilgers@goberhilgers.com

Attorneys for Defendants
SAGE SOFTWARE, INC.

        */s/ Dean G. Dunlavey*
Mark A. Flagel (pro hac vice)
Dale Chang (pro hac vice)
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, California 90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
mark.flagel@lw.com
dale.chang@lw.com

Dean G. Dunlavey (pro hac vice)
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: (714) 755-8260
Facsimile: (714) 755-8290
dean.dunlavey@lw.com

Richard P. Jeffries (SBN 20089)
CLINE WILLIAMS WRIGHT
JOHNSON & OLDFATHER, L.L.P.
One Pacific Place
1125 South 103rd Street - Suite 320
Omaha, Nebraska 68124
Telephone: (402) 397-1700
Facsimile: (402) 397-1806
rickjeffries@clinewilliams.com

Attorneys for Defendant
SYMANTEC CORP.

    */s/ Michael T. Hilgers*
Michael T. Hilgers
GOBER HILGERS PLLC
1603 Farnam Street, Suite 3000
Omaha, NE 68102
Telephone: (402) 218-2106
Facsimile: (877) 437-5755
mhilgers@goberhilgers.com

Mark D. Fowler (pro hac vice)
Robert Buergi (pro hac vice)
DLA Piper LLP (US)
2000 University Ave.
East Palo Alto, CA 94303-2214
Telephone: (650) 833-2000
Facsimile : (650) 833-2001
mark.fowler@dlapiper.com
robert.buergi@dlapiper.com

Attorneys for Defendants
TREND MICRO INCORPORATED

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served electronically on October 4, 2011 to counsel of record via the Court's CM/ECF system.

/s/*Mark Dunglinson*
Litigation Paralegal