IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PRISM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 8:10CV220 |
| | ) | |
| v. | ) | |
| | ) | |
| ADOBE SYSTEMS, INCORPORATED, | ) | MEMORANDUM AND ORDER |
| AUTODESK, INC.; McAFEE, INC., | ) | |
| NATIONAL INSTRUMENTS | ) | |
| CORPORATION; SAGE SOFTWARE, | ) | |
| INC., SYMANTEC CORPORATION; | ) | |
| THE MATHWORKS, INC., and | ) | |
| TREND MICRO INCORPORATED, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Prism Technologies, LLC ("Prism") alleges
infringement of its patent, U.S. Patent No. 7,290,288 ("'288
patent"), by defendants Adobe Systems, Inc., Autodesk, Inc.,
McAfee, Inc., National Instruments Corp., Sage Software, Inc.,
Symantec Corp., The Mathworks, Inc., and Trend Micro, Inc.
(collectively, "defendants").  Before the Court is defendants'
motion for a protective order pursuant to Federal Rule of Civil
Procedure 26(c), with accompanying brief and index of evidence
(Filing Nos. 330, 331, and 332).  Prism filed an opposing brief
with index of evidence (Filing Nos. 374 and 375), and defendants
filed a reply brief with index of evidence (Filing Nos. 396 and
397).  After reviewing the parties' submissions, the Court will
grant in part and deny in part defendants' motion for a
protective order.

## I.   Protective Orders - Procedural History.

Prism filed its complaint in this action on June 8, 2010 (Filing No. 1).  To accommodate an early, initial *Markman* hearing, discovery was stayed until July 22, 2011.  Two months later, Prism and defendants both filed motions for a protective order covering discovery in this matter (Filing Nos. 277 and 285).  While the proposed motions were largely overlapping, some disputes were not resolved by the parties.  The Court issued an order resolving the differences between the parties so that they could file a joint motion (Filing No. 366).  Subsequently, the parties submitted a joint motion for protective order, which the Court granted on November 22, 2011 (Filing No. 390).  This request for a protective order by defendants is supplemental to the November 22, 2011, protective order.

## II.   Federal Rule of Civil Procedure 26(b); Patent Discovery.

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."  *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  Federal Rule of Civil Procedure 26(b) allows for broad discovery of "any nonprivileged matter that is relevant to any party's claim or defense –– including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."  Fed. R. Civ. P. 26(b)(1).

-2-

Relevance during discovery is not measured by the Federal Rules of Evidence:  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.* Relevance is to be broadly construed for discovery issues and encompasses "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

However, the proponent of discovery must make "[s]ome threshold showing of relevance . . . before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).  "Determinations of relevance in discovery rulings are left to the sound discretion of the trial court . . . ." *Hayden v. Bracy*, 744 F.2d 1338, 1342 (8th Cir. 1984).

In the context of patent infringement cases, some district courts have created more specific, local rules as to discovery regarding infringement, non-infringement, and invalidity contentions. *See* Rules of Practice for Patent Cases before the Eastern District of Texas (the "Patent Rules," abbreviated "P.R. __").  For example, in the Eastern District of Texas, "[n]ot later than 10 days before the Initial Case

Management Conference with the Court, a party claiming patent infringement must serve on all parties a 'Disclosure of Asserted Claims and Infringement Contentions.'"  P.R. 3.1.

These local rules delineate just what should be included in the required disclosure, such as "each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware."  *Id.*  Thus, "'[t]he Patent Rules demonstrate high expectations as to plaintiffs' preparedness *before* bringing suit, requiring plaintiffs to disclose their preliminary infringement contentions *before* discovery has even begun.'"  *Connectel, LLC, v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005) (emphasis added) (quoting *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005)).

As much as defendants might wish it were so, the District of Nebraska has no local rules regarding patent case discovery, and the Nebraska district court is not compelled to require parties in an infringement case to follow patent discovery rules from other jurisdictions.  Nevertheless, the reasoning of these other district courts provides persuasive guidance for the management of patent case discovery and will be cited as such in this memorandum and order.

-4-

## II.  Federal Rule of Civil Procedure 26(c).

Although Federal Rule of Civil Procedure 26(b) does allow for broad discovery, the federal rules also permit supervision of discovery by the courts.  Rule 26(c) states,

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . .  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery; . . .
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . .

Fed. R. Civ. P. 26(c)(1).  The rules "leave it to the enlightened discretion of the district court to decide what restrictions may be necessary in a particular case."  8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2036 (3d ed. 2010).

"Because of liberal discovery and the potential for abuse, the federal rules 'confer[ ] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required.'"  *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Seattle Times Co. v.*

-5-

*Rhinehart,* 467 U.S. 20, 36 (1984)).  Not all relevant material is discoverable; "'[e]ven if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information.'" *Miscellaneous,* 197 F.3d at 925 (quoting *Micro Motion, Inc. v. Kane Steel Co.,* 894 F.2d 1318, 1323 (Fed. Cir. 1990) (emphasis omitted)).  "Fed. R. Civ. P. 26(c) requires that 'good cause' be shown for a protective order to be issued.  The burden is therefore upon the movant to show the necessity of its issuance, which contemplates 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements . . . .'" *Gen. Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204, 1212 (8th Cir. 1973) (citation omitted).

Both Rule 26(c) and United States District Court for the District of Nebraska local rule 7.0.1(i) require that the party seeking a protective order must "meet and confer" with the other party "in an attempt to resolve the dispute without court action."  Fed. R. Civ. P. 26(c)(1).

**III.  Defendants' Motion for Protective Order.**

Here, defendants claim that Prism's discovery requests "seek information regarding non-accused technologies" (Filing No. 330, at 2).  Defendants state, "The information Prism seeks is not relevant to any claim or defense in this case and not

-6-

reasonably calculated to the discovery of admissible evidence" (*Id.*).  Further, defendants allege that the information sought by Prism is broad in scope and "compliance would be unduly burdensome, if not impossible for Defendants" (*Id.*).  Thus, defendants request a protective order denying Prism discovery of "non-accused technologies or, in the alternative, technologies or products that are not 'reasonably similar' to those accused by Prism including those used internally within Defendants' organizations" (*Id.* at 3).

Defendants attach a "Nebraska Civil Rule 7(i) Certificate of Conference" to their motion that reads as follows:

> The undersigned [Michael T. Hilgers] hereby certifies that on October 27, 2011, I had a telephone conversation with counsel for Prism, Christopher D. Banys, in which I discussed the relief sought herein.  The conversation took place at or about 4 p.m.  Counsel for Prism indicated that Prism was opposed to the relief sought herein.

(Filing No. 330, at 10).  The Court finds that defendants have satisfied the discovery motion "meet and confer" requirement of Rule 26(c) and local rule 7.0.1(i).

**A.  Prism is not restricted to discovery of possible infringement via CD-ROMS only.**

Defendants' first argument in favor of a protective order is that the offending discovery requests are unrelated to Prism's infringement theory as Prism has articulated it in the

following:  Prism's complaint; Prism's infringement contentions
included in its responses to defendants' first set of
interrogatories; and Prism's comments to the Court at the July
2011 hearing (Filing No. 331, at 3-6).  As delineated in this
Court's order denying summary judgment, the Court does not find
that Prism restricted itself to an infringement theory relating
only to software activation via CD-ROM in either its complaint or
its statements to the Court in July 2011 (Filing No. 393).  Thus,
generally speaking, this Court will not rule that Prism's
discovery is limited to defendants' software products that
contain a CD-ROM.

**B.  Prism is not restricted to discovery of possible
infringement via software products that defendants sell.**

More specifically, defendants complain that Prism's
discovery requests "are not tied to any software actually
produced, marketed, or sold by each Defendant to a third party"
(Filing No. 331, at 9).  Moreover, Prism's requests "involve
unspecified technologies used internally within Defendants'
organization and not software sold by Defendants to the public"
(*Id*. at 10).  Thus, the question becomes whether Prism has
limited itself to accusing products that are sold by defendants
to the public, as defendants claim.

A look at the complaint, again, indicates that Prism
did not so limit itself.  In the complaint, Prism alleged that
each defendant is infringing the '288 patent "by making, using,

-8-

offering to sell, and/or selling authentication systems and methods for controlling access to protected computer resources with various [defendant] software products" (Filing No. 1, at 5-8).[1]  The use of the disjunctive "or" establishes that "selling" the software product to a third party is only one of several ways that Prism is alleging infringement.  Thus the defendants have not established that Prism's requests are outside the scope of its complaint on that basis alone.

**C.  Prism is largely, but not completely, limited to discovery of possible infringement via already accused products or products that are "reasonably similar" to already accused products.**

It is certainly true that Prism's first infringement contentions as articulated in its responses to defendants' first set of interrogatories are limited to software activation via CD-ROM.  *See* Exhibits 1-8, Filing No. 292.  Defendants claim that Prism's offending discovery requests fall outside the scope of its first infringement contentions.  Defendants further claim that "a party is not permitted to expand discovery beyond that relating to the accused products, or in some cases technologies

---

[1] Prism follows the language of 35 U.S.C. § 271(a):  "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

that are not 'reasonably similar' to the accused products"
(Filing No. 331, at 10).

Defendants rely on case law from the Eastern District
of Texas and the Northern District of California to support this
claimed restriction.  For example, defendants cite the Northern
District of California, where the court chided the defendants in
that case for their overly broad discovery, saying, "It appears
that Defendants seek the Court's permission to engage in a
fishing expedition, so that they do not have to conduct an
investigation into whether or not additional products infringe
their patents.  To deny such a request is not contrary to law."
*Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co., Ltd.*, No.
CV 05-8493-AG(SHx), 2007 WL 4302701, at *3 (C.D. Cal. June 27,
2007).  However, this decision centered around the interpretation
of a local patent rule, N.D. Cal. Pat. R. 3-1:  "Courts have
interpreted this local patent rule as imposing a limitation on a
party seeking discovery."  *Id.* at *3.  Here, of course, there is
no such local rule to interpret.

The *Samsung* court also noted that discovery requests
cannot be based solely on "'mere suspicion or speculation,'" but,
rather, that the party requesting discovery must establish a
"reasonable basis to suspect that additional products allegedly
infringe the patents-in-issue."  *Id.* (quoting *Micro Motion, Inc.
v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990)).

This standard is similar to that used by courts generally in evaluating the relevance of discovery requests. *See supra*.

Other courts have been more reticent about making a hard and fast rule regarding patent case discovery, even in the context of local patent rules. In *Epicrealm Licensing, LLC v. Autoflex Leasing, Inc.*, Nos. 2:05-CV-163-DF-CMC,:05-CV-356-DF-CMC, 2007 WL 2580969 (E.D. Tex. Aug. 27, 2007) the Eastern District of Texas addressed "whether the scope of discovery should be strictly limited to the products and services specifically identified in the patent holder's [patent infringement contentions, as required by local rule]." *Epicrealm*, at *2.

The *Epicrealm* court found "no bright line rule that discovery can only be obtained if related to an accused product identified in a party's [patent infringement contentions]." *Id.* at *3. Instead, as to the restricting local rules that require initial patent infringement contentions to delimit discovery, the court stated that, "'the scope of discovery is not limited to the preliminary infringement contentions or preliminary invalidity contentions but is governed by the Federal Rules of Civil Procedure.'" *Id.* (quoting § 2-5, Miscellaneous Order No. 62 (Dallas Div., N.D. Tex Apr. 2, 2007)). Further, the *Epicrealm* court interpreted this to mean "that this Dallas Division local rule intends that the scope of discovery is determined on a

-11-

case-by-case basis and as contemplated by the 'relevant to the claim or defense of any party' language in Federal Rule of Civil Procedure 26(b)(1)."  *Id*. at *3.

The *Epicrealm* court quoted approvingly, "Judge Ward of the Eastern District of Texas has found that relevant discovery in a patent infringement suit includes discovery relating to the technical operation of the accused products, as well as the identity of and technical operation of any products reasonably similar to any accused product."  *Id*. at *3 (quotation omitted).

This "reasonably similar" language appears in other Texas cases, as well.  *See, e.g., Honeywell Intern. Inc. v. Acer America Corp.*, 655 F.Supp.2d 650, 654 (E.D. Tex. 2009) (discussing the "'reasonably similar' standard").  In *Honeywell*, the court noted that the "reasonably similar" test is grounded in the notion that "the primary purpose of [patent infringement contentions] is to give a defendant notice of a plaintiff's specific theories of infringement."  *Honeywell*, 655 F.Supp.2d at 655.  However, this goal is tempered by the fact that when discoverable material is not publicly available, the specificity of the theory on infringement is limited.  For example, unlike cases where desired information was available on the Internet, in *Honeywell*, the desired information "at issue in this case [is] not publicly available, and hence, absent this discovery,

[plaintiff] cannot determine which [defendant] products to accuse."  *Id.* at 657.

Putting this all together, if this Court is to follow the reasoning of the learned courts of the Eastern District of Texas and the Northern District of California, the following guidelines appear.  First, the general contours of a desire for broad discovery apply as much in patent cases as in any other. Second, defendants should have some kind of notice as to the specific theory of infringement.  Third, the objects about which the moving party seeks discovery must ordinarily be "reasonably similar" to the already accused products, whether those accusations are made in infringement contentions as required by local rule or, as here, in the course of discovery via answers to defendant's interrogatories.  This "reasonably similar" standard must necessarily be determined on a case by case basis, since every patent is different.

Fourth, whether or not the desired information is publicly available will impact the ability of the plaintiff to articulate infringement contentions and discovery requests with specificity.  This, in turn, may limit plaintiff's ability to demonstrate how the discovery request is related to products that are "reasonably similar" to already accused products.  Finally, all of these factors must be analyzed using a "totality of the circumstances" weighting.  *See Honeywell*, 655 F.Supp.2d at 658.

-13-

**D. Prism properly gave notice to various defendants of new infringement contentions on October 27, 2011, and November 18, 2011.**

On October 27, 2011, Prism served first supplemental objections and responses to the first set of interrogatories on defendants McAfee, Inc. ("McAfee") (Ex. 2, Filing No. 375), Adobe Systems Incorporated ("Adobe") (Ex. 6, Filing No. 375), and Symantec Corporation ("Symantec") (Ex. 7, Filing No. 375).  In addition, on November 18, 2011, Prism served first supplemental objections and responses to the first set of interrogatories on defendant Trend Micro Incorporated ("Trend Micro") (Ex. 4, Filing No. 397).  In Prism's brief in opposition to defendants' motion (filed before the supplemental responses to Trend Micro, so referring only to the supplemental responses to McAfee, Adobe, and Symantec), Prism claims that these supplemental responses identify products of the selected defendants that

> infringe the '288 patent because they employ the same system as disclosed and claimed in the '288 patent:  controlling access to protected resources in a computer network by requiring the user to present information from a 'hardware key' when trying to gain access to the system from a client computer device.

(Filing No. 374, at 6).  Each of the products uses a "hardware key" that is not a CD-ROM, and will be referred to herein as "supplemental infringement products."  *See* Filing No. 374, at 6-8).

-14-

Prism claims that since discovery began in July 2011, Prism "has uncovered evidence of systems that Defendants make, use, or sell that are unrelated to software activation but also infringe the '288 patent, as set forth in Prism's . . . supplemental interrogatory responses to Defendants" (Filing No. 374, at 9). Defendants aver that since these newly accused, supplemental infringement products have nothing to do with software activation (as Prism admits), they cannot be "reasonably similar" to the initially accused products (Filing No. 7, at 7). As defendants point out, Prism does not offer any explanation as to why these claims were only available to it "once discovery was begun."[2]  Should other infringement theories evolve as discovery continues, the Court assumes that Prism will be able to explain why it could not have raised the issues earlier.

Prism claims that the supplemental infringement products "constitute 'authentication systems and methods for controlling access to protected computer resources associated with' Defendants' software products," thus falling well within the confines of Prism's complaint (Filing No. 374, at 16 (quoting

---

[2] Defendants also claim that "these supplemental contentions do not provide a basis to deny the Motion [for protective order]" (Filing No. 396, at 9).  The Court's reading of Prism's brief suggests that Prism is calling attention to the supplemental contentions in part to show that not all of its accused products involve software activation and CD-ROMs.  Prism seemed to be saying that its other offending discovery requests were inquiring into technologies that, like the supplemental contention technologies, do not involve software activation or CD-ROMs.

Filing No. 1, at 6)).  On the other hand, defendants argue in some detail that Prism's supplemental contentions with regard to Adobe, Symantec, McAfee, and Trend Micro are deficient because the supplemental infringement products, as described by Prism, do not infringe the '288 patent (Filing No. 396, at 14-17).  The Court finds that this is a question of fact to be decided at trial.

The question is whether or not Prism can augment its infringement contentions after filing its first set of interrogatory responses.  By analogy with the Patent Rules of the Eastern District of Texas, defendants argue that Prism should not be allowed to augment its infringement contentions.

However, the parties' report of their Rule 26(f) planning meeting indicated that they did not come to an agreement as to any limitations on the timing of patent infringement, non-infringement, or invalidity contentions (Filing No. 155, at 13-14).  Unlike the Eastern District of Texas or the Northern District of California, as noted above, there is no local rule in the Nebraska district court to guide the way.

This Court was presented with a similar, but not identical, issue in a previous case involving Prism:  *Prism Technologies, LLC v. Research in Motion, LTD*, No. 8:08CV537, 2010 WL 1254940 (D. Neb. Mar. 24, 2010).  Unlike in the present case, in *Research in Motion*, the parties agreed as follows:  that

Prism's initial infringement contentions would be served by a particular date; that the contentions could be amended without leave of court for a little over two months hence; and that Prism could amend for a period of fifteen days after the claim construction hearing. *Research in Motion,* 2010 WL 1254940 at *1. Otherwise, Prism would need to seek leave of court to amend. *Id.* In *Research in Motion*, the question before the Court was whether to grant Prism's motion to amend its infringement contentions when the motion was filed thirteen months after the commencement of the case and five months after the end of the period where amendment could occur without leave of court. *Id.*

As here, defendant Research in Motion objected to the amendment, claiming that Prism could have included its supplementary contentions with its original contentions because "the information providing the basis for the amendment was publicly available." *Id.* at *3. There, this Court quoted from *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, [359] F. Supp. 2d 558 (E.D. Tex. 2005) to establish that "'software cases present unique challenges' because plaintiffs typically do not have access to the underlying technical information alleged to infringe the patent." *Research in Motion,* 2010 WL 1254940 at *3, (quoting *Am. Vide 359* F. Supp. 2d. at 560). This Court continued,

> This case is similar to *American Video* insofar as both of these

-17-

> software cases involve
> alleged-infringing products that
> require analysis of highly
> technical information that is not
> necessarily apparent in the
> products' final manifestation.
> While the final manifestation of
> RIM's products and some of the
> technical information underlying
> them may have been publicly
> available, similar to the product
> in *American Video*, this does not
> mean Prism could have meaningfully
> utilized that information in making
> its preliminary infringement
> contentions.

*Research in Motion,* 2010 WL 1254940 at *3.

"Moreover, even assuming the highly technical

information Prism needed to craft its infringement contentions

was publicly available, this would not necessarily mean that

Prism lacked good cause to amend its infringement contentions."

*Research in Motion,* 2010 WL 1254940 at *3 n.3.   "Litigants are

entitled to rely on the information disclosed to them during

discovery to hone their theories of the case."   *Id.*   This Court

also noted, "Prejudice to the non-moving party 'is significantly

lessened when amendment occurs prior to the [claim construction]

hearing.'"   *Id*. at *14 (quoting *Performance Pricing, Inc. v.

Google, Inc.*, No. 2:07-CV-432, 2009 U.S. Dist. LEXIS 84211, at *7

(E.D. Tex. Aug. 28, 2009)).

Regarding Prism's contentions about the supplemental

infringement products, defendants state, "Allowing a party to

accuse products in this manner would gut the limitations on

-18-

discovery outlined in *Samsung* and *Honeywell*" (Filing No. 396, at 12). The Court disagrees. The Court finds that the reasoning in *Research in Motion* is equally applicable to the present case, where Prism has asserted additional infringement contentions after its initial offering, but before the principal *Markman* hearing currently scheduled for January 2012. The Court finds that the supplemental infringement contentions have been made in a timely way so as to "give a defendant notice of a plaintiff's specific theories of infringement." *Honeywell*, 655 F.Supp.2d at 655.

### E. The motion for protective order will be partly granted and partly denied.

In support of its discovery requests, Prism claims that "the discovery requests at issue in the instant motion are directly relevant to Prism's various infringement theories" (Filing No. 374, at 9). In addition, Prism claims that it is "entitled to discovery" of products that are "reasonably similar" to those already accused of infringement (*Id.*). Conversely, the question is whether defendants, as the moving party, have satisfied their burden of showing "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements . . . ." as to the undue difficulties they would suffer if Prism's discovery requests were allowed to stand. *Gen. Dynamics Corp.*, 481 F.2d at 1212.

**1. Requests for Admissions 1-14 (Ex. 3, Filing No. 332, at 3-5).** Prism claims that these requests for admissions "ask Defendants to admit or deny whether they have used various types of 'hardware keys' at any time from the issuance date of the '288 patent to the present to control access to computer resources within their organizations" (Filing No. 374, at 11). Prism states, "these RFAs reasonably relate to Prism's infringement theories, and Defendants have no basis for objecting to them" (*Id.*). In addition, as with the offending requests for production and interrogatories, Prism claims that it is asking for "information that Prism cannot obtain from public sources, as Defendants obviously do not publicize the network security systems that they employ within their companies" (Filing No. 374, at 10).

Defendants make their case generally for all the offending discovery requests. They state that because "Prism concedes that its supplemental contentions do not accuse any Defendant's internal usage of security devices," and "all but one of the discovery requests for which Defendants seek protection go to such internal use," the requests for admissions should not be allowed (Filing No. 396, at 12). Defendants claim that "the requests are not tied to any software actually produced, marketed, or sold by each Defendant to a third party" (Filing No. 331, at 9). In addition, defendants object generally that the

-20-

requests are "vague and open-ended" (Filing No. 331, at 9).
Defendants maintain that fulfilling such discovery requests would
cost considerable time and money, as yet to be quantified (Filing
No. 396, at 18).

Considering the Court's findings on the nature of
Prism's complaint, its initial and supplemental infringement
contentions, and the difficulty of elucidating infringement
contentions that are based on information solely in the hands of
the defendants, as outlined above, the Court finds that Requests
for Admissions 1-12 are relevant to the case at hand, are not
unduly burdensome to defendants, relate to products that would be
"reasonably similar" to accused products, and should be answered
by defendants.  However, because Requests for Admissions 13 and
14 do not refer to security applications that require a hardware
key[3] but only to two-factor authentication systems generically,
the Court finds that these requests are outside the scope of the
present action and need not be addressed by defendants.

**2.   Requests for Production 71-75 (Ex. 4, Filing No.
332, at 3).**   Prism claims that these "requests ask for documents
regarding Defendants' use of various hardware keys and computer
systems that employ hardware keys" and that these "requests
properly seek information relating to Prism's infringement

---

[3] The parties have agreed, and the Court has addressed the
fact in other orders in this case, that in order to infringe the
'288 patent, a defendant product must contain a "hardware key."

-21-

theories" (Filing No. 374, at 9).  As with the requests for admissions, the Court finds that Requests for Production 71-73 are relevant to the case at hand, are not unduly burdensome to defendants, relate to products that would be "reasonably similar" to accused products, and should be answered by defendants. However, because Requests for Production 74 and 75 do not refer to security applications that require a hardware key but only to two-factor authentication systems generically, the Court finds that these requests are outside the scope of the present action and need not be addressed by defendants.

   **3.   Interrogatory Nos. 2 (Ex. 2, Filing No. 332, at 4) and 9 (Ex. 5, Filing No. 332, at 3).**  Prism claims that Interrogatory No. 2 "seeks information regarding Defendants' use of hardware keys . . . in their corporate computer networks . . . .  Prism has requested this information in order to determine the full scope of infringing products the Defendants make and use" (Filing No. 374, at 10).  Prism states that Interrogatory No. 9 asks for the identification of "devices that can constitute 'hardware keys' to control access to resources in a computer network" (Filing No. 374, at 11).  The Court finds that Interrogatory Nos. 2 and 9 are relevant to the case at hand, are not unduly burdensome to defendants, relate to products that would be "reasonably similar" to accused products, and should be answered by defendants.

     **4.   Rule 30(b)(6) Deposition Notice Topics 1 and 2 (Ex. 6, Filing No. 332, at 7-9).**  Prism states that these "topics seek information from which Prism can determine all 'hardware keys' and systems that employ 'hardware keys' made or used by Defendants that are reasonably similar" to the supplemental infringement products (Filing No. 374, at 13).  The Court finds that Deposition Notice Topics 1 and 2 are relevant to the case at hand, are not unduly burdensome to defendants, relate to products that would be "reasonably similar" to accused products, and should be answered by defendants at future depositions, as applicable.

**V.   Plaintiff's Request for Rule 26(c)(2) Order.**

     Prism "requests that the Court compel Defendants to provide complete responses to the discovery requests at issue in the present motion" pursuant to Federal Rule of Civil Procedure 26(c)(2).  (Filing No. 374, at 19).  Rule 26(c)(2) states, "If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery."  Fed. R. Civ. P. 26(c).  To ensure that discovery proceeds in this action, the Court will grant Prism's request for a Rule 26(c)(2) order, to the extent that defendant's motion for protective order has been denied.  Accordingly,

IT IS ORDERED:

1) Defendants' motion for Rule 26(c) protective order (Filing No. 330) is granted as to the following discovery requests:

      a) Requests for Admissions 13-14; and

      b) Requests for Production 74-75.

2) Defendants' motion for Rule 26(c) protective order (Filing No. 330) is denied as to the following discovery requests:

      a) Requests for Admissions 1-12;

      b) Requests for Production 71-73;

      c) Interrogatories 2 and 9; and

      d) Rule 30(b)(6) Deposition Notice Topics 1 and 2.

3) Prism's motion to compel discovery is granted as to those discovery requests listed in (2)(a)-(c) above. Defendants will have until January 6, 2012, to comply with such discovery requests, to the extent that they have not already done so. Each defendant will file with the Court a certificate indicating such compliance by January 6, 2012.

4) At future depositions, defendants will answer questions regarding Rule 30(b)(6) Deposition Notice Topics 1 and 2, as applicable.

DATED this 14th day of December, 2011.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court