IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PRISM TECHNOLOGIES, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ADOBE SYSTEMS, INCORPORATED, ) <br> AUTODESK, INC.; McAFEE, INC., ) <br> NATIONAL INSTRUMENTS ) <br> CORPORATION; SAGE SOFTWARE, ) <br> INC., SYMANTEC CORPORATION; ) <br> THE MATHWORKS, INC., and ) <br> TREND MICRO INCORPORATED, ) <br> ) <br> Defendants. ) <br> _____) | 8:10CV220 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court on the motion for sanctions filed pursuant to Federal Rule of Civil Procedure 30(g) by defendant National Instruments Corporation ("National Instruments") against plaintiff Prism Technologies, LLC ("Prism") (Filing No. 348), with accompanying brief and index of evidence (Filing Nos. 349 and 350). Prism filed an opposing brief with index of evidence (Filing Nos. 388 and 389), to which National Instruments filed a reply brief with index of evidence (Filing Nos. 398 and 399). With leave of the Court, Prism then filed a surreply brief opposing the motion (Filing No. 424). After reviewing the parties' submissions, the Court will partially grant National Instruments' motion.

**I. Factual Background.**

The parties' dispute centers around the cancelled deposition of National Instruments employee Whitney Knox, which had been scheduled for Wednesday, October 26, 2011, at 9:00 a.m., in Austin, Texas. Because the time line leading up to the cancelled deposition is of some importance, the Court will review the plans for the deposition in detail.

Prism served a request for production of documents on defendant National Instruments on July 22, 2011. On October 11, 2011, Prism gave notice to National Instruments that it intended to depose National Instruments' Rule 30(b)(6) witness on Monday, October 24, 2011, at 1:00 in Palo Alto, California, and its employee, Whitney Knox, on Tuesday, October 25, 2011, also at 1:00 in Palo Alto (Ex. 2 and 3, Filing No. 350). In an October 13 email, Prism asked National Instruments to identify who the Rule 30(b)(6) witness would be, and, in addition, asked that the documents already requested be produced "at least one week in advance" of the depositions (Ex. 4, Filing No. 350, at 6).

With regard to the corporate witness, in an email dated Tuesday, October 18, 2011, National Instruments for the first time stated that Whitney Knox "may be offered" as National Instruments' Rule 30(b)(6) witness for "certain topics" (Ex. 4, Filing No. 350, at 3). In an exchange of emails, the place, date, and time for the Whitney Knox deposition were changed, and

the deposition was ultimately set for Wednesday, October 26, 2011, at 9:00 a.m. at National Instruments' offices in Austin, Texas.

In an October 19 email, National Instruments verified that "the documents we are producing today are relevant and responsive technical documents relating to the accused products located after a reasonable search, including documents responsive to your 30(b)(6) topics subject to our ensuing objections. We are not at this time searching or producing custodian's e-mails" (Ex. 4, Filing No. 350, at 2). This partial production of documents, then, did occur one week in advance of the scheduled October 26 deposition, as requested by Prism (Ex. 6, Filing No. 350).

In a responsive email that same day, October 19, Prism stated,

> It does not appear that we can resolve our differences regarding the scope of Adobe[1] and NI's document production at this time. *Nevertheless, Prism will proceed with the depositions* of Vivek Misra [of Adobe] and Whitney Knox on October 26 as you have proposed, reserving its right to seek further depositions of these individuals at a later date should Adobe or NI fail to produce documents relevant

---

[1] Adobe Systems, Incorporated ("Adobe") and National Instruments are represented by the same counsel, and many of the emails documenting the Whitney Knox deposition also discuss Adobe depositions.

>            to their depositions in a timely
>            manner prior to the 26th.

(Ex. 4, Filing No. 350, at 2)(emphasis added).

On Friday, October 21, in the late afternoon, regarding the Rule 30(b)(6) witness, National Instruments emailed to Prism, stating more unequivocally than it had earlier, "Whitney Knox will be offered as a 30(b)(6) witness for NI" for certain topics (Ex. 14, Filing No. 389, at 2).  That same Friday evening, October 21, 2011, Prism confirmed by email, "To accommodate Mr. Knox's schedule, we will go ahead and take his deposition at National Instruments' offices, as you proposed" (Ex. 5, Filing No. 350, at 2).

On Monday, October 24, 2011, at 12:32 p.m., Prism sent an email to National Instruments' counsel -- or, at least, attempted to send an email -- cancelling the Whitney Knox deposition.[2]  Prism now states, "It is unclear whether NI's counsel received this message, as Prism's counsel was suffering from a firm-wide computer networking problem that day, which prevented certain e-mails from being sent out of the firm" (Filing No. 388, at 9).  "Upon learning of this problem, however, Prism's counsel telephoned NI's counsel at around 1:15 p.m. on October 24 and relayed the message to NI's counsel that Mr.

---

[2] The times given for emails are California time, unless otherwise stated, because the Prism counsel and National Instruments counsel involved in the email exchanges are located in California.

Knox's deposition was being postponed" (Filing No. 388, at 9). At 1:27 p.m., Prism resent the 12:32 email (Ex. 18, Filing No. 389, at 2).

In the 12:32 email, Prism stated,

> [W]e have reviewed National Instruments' production from last week and have found the production to be severely deficient. . . . Because of these continuing deficiencies in National Instruments' document production, Prism cannot reasonably prepare for Mr. Knox's individual and 30(b)(6) deposition on Wednesday. We are therefore taking Mr. Knox's deposition off calendar for now until such time as National Instruments complies with its obligation to provide the relevant documents Prism needs in order to adequately prepare for the deposition.

(Ex. 16, Filing No. 389, at 2).

Meanwhile, around 1:00 p.m. on October 24, before National Instruments' counsel received either the 12:32 email or the 1:15 phone call cancelling the deposition, National Instruments counsel Tamara Frazier boarded a flight from San Jose, California, to Austin, Texas. Ms. Frazier intended to spend Tuesday, October 25, preparing with Whitney Knox for the deposition scheduled for the next day, Wednesday, October 26.

Later that same evening, Monday, October 24, 2011, responding to the 12:32 email, National Instruments emailed to Prism:

-5-

> You are blatantly reneging on our agreement at the last minute. . . . As for your belated allegations of deficiency, we note that our production of NI documents amounts to over 3400 pages and includes design documents, specifications, meeting memos, and user manuals, all of which are directly relevant to the topics for which Mr. Knox is designated to testify.

(Ex. 9, Filing No. 350, at 2). National Instruments stated, "[W]e insist Prism proceed with the deposition of Mr. Knox as scheduled on October 26 . . ." (*Id*.).

In response, on Tuesday, October 25, at 12:37 p.m. Austin time, Prism emailed to National Instruments, "Prism is not proceeding with the depositions of Eric Wilde and Whitney Knox this week . . ." (Ex. 20, Filing No. 389, at 2). Prism continued,

> With respect to your allegation that Prism is reneging on a prior agreement, that allegation is simply untrue. We never agreed to depose either Mr. Wilde [from Adobe] or Mr. Knox as 30(b)(6) witnesses this week. Indeed, despite my repeated requests that you identify who Adobe and NI would be designating as 30(b)(6) witnesses, you did not provide any such designations until the end of the day last Friday.

(Ex. 20, Filing No. 389, at 2). National Instruments counsel Tamara Frazier flew back to California that afternoon, after meeting with Whitney Knox in Austin.

-6-

II.  **Federal Rule of Civil Procedure 30(g).**

Federal courts are imbued with inherent powers that "are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962)).  "Because of their very potency, inherent powers must be exercised with restraint and discretion.  A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."  *Id*. at 44-45 (citation omitted).

While the "American Rule" requires that parties to a lawsuit are generally responsible for their own attorney fees, exceptions do exist.  *Id*. at 45.  For example, a court may award attorney fees as part of a sanction "when a party 'shows bad faith by delaying or disrupting the litigation . . . .'"  *Id*. at 46 (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)). However,

> while the narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders, many of the other mechanisms permit a court to impose attorney's fees as a sanction for conduct which merely fails to meet a reasonableness standard.  Rule

> 11, for example, imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith.

*Id.* at 47.

Federal Rule of Civil Procedure 30(g) states,

> A party who, expecting a deposition to be taken, attends in person or by an attorney may recover reasonable expenses for attending, including attorney's fees, if the noticing party failed to:
> (1) attend and proceed with the deposition . . . .

Fed. R. Civ. P. 30(g)(1). This rule does not require that the noticing party acted in "bad faith," although bad faith may play a part in the exercise of the court's discretion in making an award.[3] "In deciding a Motion for Sanctions, the court should consider all the circumstances, such as whether the failure was inadvertent or in bad faith, when setting proper sanctions." *Barrett v. Brian Bemis Auto World*, 230 F.R.D. 535, 537 (N.D. Ill. 2005). Thus, Prism's contention that it did not act in bad faith, while relevant, would not necessarily allow it to escape from the sanctions allowed by Rule 30(g).

---

[3] Other rules do require a finding of bad faith. For example, Rule 56(h) states, "If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court -- after notice and a reasonable time to respond -- may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result." Fed. R. Civ. P. 56(h).

**III. National Instruments' Motion for Sanctions.**

National Instruments asks the Court "to sanction Prism's counsel's bad faith conduct for noticing a deposition and thereafter refusing to attend" (Filing No. 348, at 2). National Instruments "seeks reimbursement of the fees and costs incurred in connection with flying its counsel from California to Texas for the agreed-upon deposition of an NI employee and witness, Mr. Whitney Knox, which did not go forward due to Prism's unjustified eleventh hour refusal to attend and proceed" (Filing No. 349, at 1). National Instruments seeks reimbursement of the travel costs for Tamara Frazier, counsel; attorney fees for the time spent in preparation for the trip; attorney fees for the travel time when Ms. Frazier could not work otherwise; attorney fees for preparing Whitney Knox for the deposition; attorney fees that would have been earned had the deposition taken place; and attorney fees for the preparation of this motion and accompanying briefs and indices of evidence. Prism objects to the motion for several reasons, which are addressed below.

**A. Notice of the Identity of the Rule 30(b)(6) Witness.** Prism claims that it could not adequately prepare for the deposition because of a delay in learning the identity of National Instruments' corporate witness. While Prism states that "NI delayed until Friday night on October 21 to provide this information [that Whitney Knox would be the Rule 30(b)(6)

-9-

witness]," National Instruments had given notice of this possibility as early as Tuesday, October 18 (Ex. 4, Filing No. 350, at 3).

Nevertheless, if Prism reasonably calculated that it would not have time to prepare for the Rule 30(b)(6) aspect of the deposition by the following Monday, the time to cancel the deposition was Friday the 21st, not Monday the 24th. Prism's statement that it had not agreed to the deposition of Whitney Knox as the Rule 30(b)(6) witness is beside the point. Prism clearly had agreed, as late as Friday evening *after* National Instruments designated Knox as the Rule 30(b)(6) witness, to continue with the deposition.

Alternatively, Prism could have proceeded with the deposition of Whitney Knox only as an individual, and postpone the Rule 30(b)(6) aspect of the deposition. *See* Ex. 2 and 3, Filing No. 350 (two separate deposition notices, one for the National Instruments Rule 30(b)(6) deposition, and one for the Whitney Knox deposition, originally scheduled for different days). Even Prism claims that as of Friday, October 21, "As Prism understood it, the deposition of Mr. Knox scheduled for October 26 was for Mr. Knox ***in his personal capacity only.***" (Filing No. 388, at 8). Prism could have proceeded with the October 26 deposition on those terms.

**B.  Production of Documents.**  Prism requested that National Instruments comply with its request for production of documents at least one week prior to the deposition dates both for Whitney Knox and for the Rule 30(b)(6) witness for National Instruments.  Prism reserved the right to recall Knox and the National Instruments witness if the documents were not produced as requested prior to the deposition dates.  National Instruments did, in fact, produce the documents as requested, one week in advance.

Prism claims that it "determined that it could not proceed with the combined personal and Rule 30(b)(6) deposition of Mr. Knox on October 26 as proposed by NI because . . . the production [of documents] was still significantly deficient, and thus taking Mr. Knox's deposition at that point would not be productive" (Filing No. 388, at 8).  This contradicts Prism's earlier emailed statement that despite having differences regarding production of documents, "*[n]evertheless, Prism will proceed with the depositions* . . . reserving its right to seek further depositions of these individuals at a later date should Adobe or NI fail to produce documents relevant to their depositions in a timely manner prior to the 26th" (Ex. 4, Filing No. 350, at 2)(emphasis added).

In addition, Prism complains that "because these documents were produced in electronic format, Prism had to send

-11-

this material to its document review vendor for processing before the material could be reviewed. Due to the large volume of these documents, the processing of these documents took several days . . ." (Filing No. 388, at 7). Prism should have taken into account the document processing time when it gave National Instruments one week in advance of the deposition as the deadline for document production.

The Court finds that National Instruments reasonably relied on Prism's statement that the deposition would occur regardless of the parties' differences regarding document production. National Instruments could not have reasonably expected that it should wait for Prism to complete its document review and give the green light before National Instruments sent counsel to Austin to prepare for the deposition.

**C. Adobe Deposition.** As noted above, Adobe and National Instruments are represented by the same counsel, so many of the emails documenting the Whitney Knox deposition also discuss Adobe depositions. Prism states,

> [I]t is Adobe and NI who have engaged in gamesmanship here with their last-minute document dumps, their last-minute designations of 30(b)(6) witnesses, their refusal to produce emails from the files of witnesses they themselves have identified as relevant witnesses, and their attempt to schedule multiple depositions in multiple cities on the same day in order to make it as difficult as possible

>                    for Prism's counsel to prepare for
>                    and take the depositions.

(Ex. 20, Filing No. 389, at 2).  Here, Prism seems to be complaining of the difficulties of litigating with multiple defendants, a situation that was in its own control.  The Court does not place any further importance on the Adobe depositions for the sake of this motion for sanctions, regardless of Prism's allegations of National Instruments' "improper actions" in association with Adobe, including a "dump" of "51,000 pages of documents on Prism relating to the depositions," when less than a tenth of those pages were from National Instruments (Filing No. 388, at 11).

        **D.  Timing of the Cancellation.**  Both Prism and National Instruments cite various other cases considering a motion for sanctions where the notice of cancellation of a deposition was given in the day or two before the deposition.  In some cases, the court approved sanctions, and in other cases, it did not.  This Court does not see any value to a bright-line rule that would dictate whether sanctions are allowed, depending on some pre-ordained number of hours between the cancellation and the scheduled deposition.  Rather, a case-by-case determination fits the analysis better, where the Court can determine whether the moving party could have done anything to mitigate expenses upon hearing of the cancellation.

In this case, the Court finds it reasonable that National Instruments would want to prepare Whitney Knox on the day before the deposition, Tuesday, October 25. Further, the Court finds it reasonable that National Instruments' counsel would fly from San Jose to Austin on the day before she was scheduled to prepare Whitney Knox for the deposition, that is, on Monday, October 24, 2011. The Court finds that it would make little sense for National Instruments' counsel to incur more travel costs by staying in Austin a second night, Tuesday, so that she could go to the scheduled location for the deposition on Wednesday when Prism plainly communicated on Tuesday that the deposition was not going to occur. The Court finds that National Instruments' counsel properly mitigated costs by returning to California on Tuesday, rather than Wednesday, when it was evident that the deposition would not take place.

**E. Good Faith.** Prism argues that it has not acted in bad faith, because it claims it had good reason for the cancellation, and that the cancellation was timely made. Regardless of whether or not Prism acted in good faith, the Court finds that Prism's cancellation of the deposition was not timely made, and National Instruments incurred costs that it would not have incurred but for the cancellation.

**IV.   Attorney Fees and Costs**.

"As with the award of statutory attorneys' fees to a party that prevails on the merits, an award of fees as a sanction for discovery abuse begins with a lodestar analysis." *Edmonds v. Seavey*, No. 08 Civ. 5646, 2009 WL 1598794, at *1 (S.D.N.Y. June 5, 2009). "The court calculates the lodestar by totaling the number of hours reasonably expended by each attorney multiplied by the appropriate hourly rate for that attorney." *Id.* "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). "In a case where the plaintiff does not use local counsel, the court is not limited to the local hourly rate, if the plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case." *Id.*

   **A.   Travel Expenses**.  National Instruments has documented $1,108.17 in travel expenses for Tamara Frazier's journey from California to Texas.  The Court finds that these expenses are reasonable and could not have been avoided, given the timing of the cancellation.  Therefore, Prism will reimburse National Instruments for these expenses.

   **B.   Attorney Fees**.  National Instruments claims that it has incurred $25,799 in attorney fees associated with the deposition.  National Instruments has provided little

justification for this figure, with only a small chart showing very little detail as evidence (Ex. 1, Filing No. 399, at 2). For example, National Instruments states that its request for fees includes both California counsel and local Nebraska counsel, but it does not break down the hours indicating how much time was spent by each.  While the two firms charge different rates, the difference is not shown in National Instruments' chart.

As another example, National Instruments states that it spent 19.8 hours preparing the original motion for sanctions and supporting filings, for a cost of $5,854.  Yet its reply brief and affidavit, which somehow required 22.2 hours to prepare, cost over twice as much – $11,036.  National Instruments does not provide any explanation for why the reply brief was so much more expensive than the original brief.  Taking into account the lack of egregious behavior or bad faith by Prism, the Court finds that National Instruments has not supported its motion with the requisite evidence such that the Court would wholly approve its request for attorney fees, particularly with regard to the preparation of this motion and accompanying briefs.

However, the Court finds that spending 5.4 hours to prepare for the session with Whitney Knox, in addition to the 4.3 hours spent in conference with Whitney Knox on Tuesday morning (presumably before Prism definitively stated via email at 12:37 p.m. Austin time that the deposition would not go on), were

expenses that could not have been avoided. While this preparation time was not totally wasted, assuming the Whitney Knox deposition is rescheduled, some of that time will likely have to be repeated whenever the deposition does take place. Thus, the Court will award approximately half the time, 4.8 hours, in attorney fees to National Instruments. In addition, the Court will award fees for the 3.5 hours that National Instruments' counsel was traveling and unable to work. This totals 8.3 hours.

Next the Court needs to determine what hourly attorney billing rate to use, but National Instruments has not given the Court any way to determine how National Instruments arrived at its hourly rate. In the absence of guidance from National Instruments, the Court will follow a recent Nebraska case that found that hourly attorney billing rates of $175 per hour to $335 per hour were reasonable for a complex patent case in the Omaha, Nebraska area. *Kellogg v. Nike, Inc.*, No. 8:07CV70, 2010 WL 323994, at *1 (D. Neb. January 20, 2010).

In *Kellogg*, unlike here, the movant "submitted detailed time sheets showing the respective hours expended and hourly rates charged by his attorneys . . . produced evidence of expenses and evidence of the skills and experience of each attorney," and "presented affidavits showing that the hourly rates and hours expended on the litigation are reasonable in the

Omaha, Nebraska area[] given the complexity of the litigation, the importance of the issues, the skill of the attorneys, and the quality of work." *Id.*  The Court finds that the middle of this range, $255 per hour, is a reasonable hourly rate and thus will allow an award of $2,116.50 for the 8.3 hours of attorney work.

    **C. Attorney Fees for the Deposition Itself**.  Finally, National Instruments requests $5,400 in attorney fees that it would have incurred if the deposition had taken place as scheduled.  The Court assumes that National Instruments' counsel found some other work to do on Wednesday, October 26, when she was back in her office in California, so that she did not sacrifice that day's work due to the cancellation.  The Court will not award the attorney fees that National Instruments would have incurred had the deposition taken place as scheduled.  Accordingly,

    IT IS ORDERED: National Instruments' motion for sanctions (Filing No. 348) is granted in part, as follows:

    1) The Court awards National Instruments $1,108.17 in travel expenses;

    2) The Court awards National Instruments $2,116.50 for attorney fees; and

3) Prism will pay the total amount of $3,224.67 to National Instruments by January 6, 2012.

DATED this 29th day of December, 2011.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court