IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

PRISM TECHNOLOGIES, LLC,          )
                                  )
                Plaintiff,        )          8:10CV220
                                  )
        v.                        )
                                  )
ADOBE SYSTEMS, INCORPORATED;      )          MEMORANDUM AND ORDER
AUTODESK, INC.; McAFEE, INC.;     )
SYMANTEC CORPORATION;             )
and TREND MICRO INCORPORATED,     )
                                  )
                Defendants.       )
_____    )

        This matter is before the Court on the "emergency

motion" of plaintiff Prism Technologies, Inc. ("Prism") "to

preserve evidence and for sanctions" as to defendant Adobe

Systems Incorporated ("Adobe") (Filing No. 528, with an

accompanying brief and indices of evidence, Filing Nos. 529, 530

and 531).  In its motion, Prism seeks the following:  an order

requiring Adobe to desist from any further destruction of

evidence; an adverse inference jury instruction with regard to

evidence spoliation; and attorney fees for the preparation of the

motion.  One day after Prism filed its motion, Adobe filed an

"objection to expedited review of Prism's 'emergency' motion"

(Filing No. 533, with index of evidence, Filing No. 534).  The

Court denied Prism's request for an expedited review and set a

schedule for the parties' responsive briefs (Filing No. 538).

Adobe then filed a brief opposing Prism's motion, with index of

evidence (Filing Nos. 573 and 574), requesting compensation for

attorney fees.  Prism filed a reply brief, with index of evidence
(Filing Nos. 598 and 599).  After reviewing the parties'
submissions and the relevant law, the Court will grant in part
and deny in part Prism's motion and will deny Adobe's request for
attorney fees.

**I.   Background.**

On Friday, March 16, 2012, Prism deposed Adobe's Rule
30(b)(6) corporate witness, Eric Wilde, a Senior Engineering
Manager.  During a discussion regarding source code testing, the
following dialogue transpired:

> Q. How is that [feedback to
> software engineers regarding
> testing] done?
>
> A. It depends on the testing
> methodology used at that time.
>
> Q. Okay.  What are the different
> ways?
>
> A. So if it was a code review, then
> they provide feedback in the code
> review itself, usually verbal.
>
> Q. Okay.  Are there any notes
> taken?
>
> A. Sometimes.  But that would be an
> individual basis, they write on
> papers, mark up papers, that
> sort of thing.
>
> Q. Do you know if any of those
> notes were collected and produced
> in the case?
>
> A. I don't know.  I didn't provide
> them.

> Q. Okay.
>
> A. They're generally not -- They're
> just paper.  Throw it in the
> recycling bin.
>
> Q. I see.  And do you think those
> notes are thrown in the recycling
> bin even today?
>
> A. They're just quick notes.  Yeah.
>
> Q. Okay.  We'd probably be
> interested in seeing some of those
> notes.

(Ex. 2, Filing No. 530, at 8).  On Monday, March 19, 2012, Prism

wrote to Adobe to express its concern about "apparent evidence

spoliation" in reference to the "recycling" of the notes, and to

inform Adobe that Prism was "considering moving for sanctions"

(Ex. 3, Filing No. 530, at 2).  Adobe's counsel responded that

evening, in part, "[W]e've [sic] very concerned with the

allegation you've hurled at us tonight.  Can you point out where

you think the discrepancy is?"  (Ex. 3, Filing No. 531, at 2).

The next day, March 20, the parties spoke on the

telephone.  According to Prism, "While dismissing Prism's

concerns, Adobe's counsel stated that she would look to see if

any notes still existed, but refused to agree to preserve,

collect and produce any remaining notes" (Filing No. 529, at 10).

Adobe describes the conversation differently, stating, "During

that call, although counsel for Adobe did not accept Prism's

contention that documents were being destroyed, counsel

-3-

nevertheless responded that Adobe was investigating the serious issue raised in Prism's letter and would respond to Prism the next day by the close of business" (Filing No. 573, at 7).  In addition, Adobe states, "Although Prism makes much of the fact that counsel for Adobe supposedly did not promise to stop destroying paper notes, in fact Adobe's counsel made clear that Adobe would continue to preserve all relevant evidence, but did not believe any paper notes had been created or destroyed" (Filing No. 573, at 7).  Prism disagrees with this characterization of the phone conference, saying, "Mr. Banys [Prism counsel] further recollects that, when he asked Ms. Hunsaker [Adobe counsel] to respond by close of business Wednesday, Ms. Hunsaker responded that Mr. Banys could not dictate the timeline by which Adobe would complete its 'investigation' and Ms. Hunsaker refused to say when Adobe might do so" (Filing No. 598, at 16).[1]

On March 21, 2012, before receiving the additional response from Adobe, Prism filed the present motion.  Later that day, Adobe responded by letter to Prism's allegations, as Adobe claims that it said it would do.  In that letter, Adobe stated,

---

[1] The Court finds that the March 20 phone call satisfied the "meet and confer" requirements of Nebraska Civil Rule 7.0.1(i). Beyond that, the Court has no way to determine which counsel's memory of the phone call is the more accurate.  At any rate, regardless of the timing of the motion, the impasse continues, and the Court will consider Prism's motion.

"Adobe has preserved all relevant evidence in the case and will continue to do so" (Ex. 2, Filing No. 534, at 2).  In addition, "We have also conducted a supplemental investigation and verified that paper notes are, in fact, not created by the activation team during code review or testing, but rather, documentation or notes of that process, if any, are recorded electronically and have been preserved and/or produced to you during this litigation" (*Id.*).  Adobe wrote,

> Since receiving your March 19 letter two days ago, we have confirmed with the individuals and engineering groups involved in writing the activation code at issue here that this is not their practice in connection with testing code, and they are aware of no such handwritten notes having been created or disposed of during this case.

(*Id.* at 3).  "Any such notes are made electronically or systematically in electronic form, such as in the bug database referred to by Mr. Wilde" (*Id.*).

Adobe went on to describe the methods by which information about testing is maintained at Adobe, including its internal documentation sites, or "wikis," meeting notes, test plans, and email correspondence (*Id.* at 3-4).  Adobe stated that this information had already been made available to Prism (*Id.* at 3).

In response to Prism's motion to the Court, Adobe
submitted a declaration under penalty of perjury by Mr. Wilde
(Ex. 12, Filing No. 574).  Mr. Wilde described his present duties
at Adobe, stating that he does not conduct or directly supervise
code review.  Mr. Wilde stated that in preparation for his
deposition, he had not spoken with "the activation engineering
team about their individual practices or note taking habits
during code review meetings or otherwise during development or
testing of the accused Adobe products" (*Id*. at 3).  Mr. Wilde
stated,

> In fact, I am not aware of any
> handwritten or paper notes being
> created during the testing and
> development of the accused Adobe
> products at issue in this case; nor
> am I aware of any handwritten notes
> relating to the accused Adobe
> products that have been recycled or
> otherwise not preserved, either
> before or during this litigation.
> To the extent anything in my
> testimony is being interpreted
> otherwise, it is incorrect.

(*Id.*).  With regard to his deposition testimony, Mr. Wilde
declared,

> My testimony in this regard did not
> refer to the accused products in
> this case or to the practice of any
> individual on the activation
> engineering team relevant to this
> case.  If I would have been asked
> more specific questions about the
> existence of handwritten notes
> prepared by specific individuals or
> related to the accused technologies

-6-

> here, I would have testified then,
> as I would today, that I am not
> aware of the creation or existence
> of such paper notes, nor am I aware
> of any instance in which such notes
> have been recycled or otherwise
> destroyed.

(*Id.*).  Instead, the notes to which Mr. Wilde referred in his

deposition "were just quick notes intended for my personal use,

not for a wider audience, whether engineers on the development

team or other individuals" (*Id.* at 4).  "If relevant at all to

the implementation, any such notes would necessarily be recorded

in more permanent form elsewhere, whether in technical

specification documents, bug databases, within comments in the

code itself, or in email discussions among the engineering team"

(*Id.*).

    Adobe also submitted to the Court a declaration under

penalty of perjury by Wei Cheng, manager of the engineers who

test Adobe's activation technology.  Mr. Cheng declared, "In my

current role, I am responsible for the overall product activation

of the accused Adobe products and directly manage the group of

individual software engineers who test and develop Adobe's

activation technology" (Ex. 13, Filing No. 574, at 2).  "If

individual engineers on my development team were creating

handwritten notes on paper during code review meetings or

otherwise in the development and testing process, I would know

about it given my role and responsibilities" (*Id.* at 3).  "The

developers on my team do not create handwritten or paper notes in the development or testing process, nor have any such handwritten notes been recycled or otherwise destroyed" (*Id*. at 3-4). "This is based on my experience directly leading the development team since 2008, and personally participating in that development and testing" (*Id*. at 4).

## II.  Prism's Motion for Sanctions.

"The district court retains an inherent power to impose sanctions . . . ." *Strutton v. Meade*, 668 F.3d 549, 559 (8th Cir. 2012) (citing *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004). "A spoliation-of-evidence sanction requires 'a finding of intentional destruction indicating a desire to suppress the truth.'" *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (quoting Stevenson, 354 F.3d at 746). This "intentional destruction of evidence indicating a desire to suppress the truth" is the "ultimate focus" for a Court that is considering the imposition of sanctions for spoliation of evidence. *Strutton,* 668 F.3d at 559 (quoting *Greyhound Lines*, 485 F.3d at 1035). "'Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors.'" *Greyhound Lines*, 485 F.3d at 1035 (quoting *Morris v. Union Pac. R.R.*, 373 F.3d 896, 902 (8th Cir.2004)). In

-8-

addition, "[t]here must be a finding of prejudice to the opposing party before imposing a sanction for destruction of evidence." *Stevenson*, 354 F.3d at 748 (citing *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993)).  "Finally, whether the extent of a sanction is appropriate is a question peculiarly committed to the district court."  *Dillon*, 986 F.2d at 268.

In its supporting brief, Prism emphasized what it sees as the importance of the paper notes by avowing, "The only business records that Adobe generates to memorialize these tests [of its activation systems source code] are handwritten notes - beyond these notes, Adobe has no standardized process by which it records the results of these tests" (Filing No. 529, at 4). Prism states, "The notes, as described by Mr. Wilde, are the only contemporaneous record of code reviews within Adobe's accused systems" (*Id*. at 11).  Prism included a declaration by its expert code reviewer that "[Mr. Wilde's] notes are the type of written documentation regarding the development, modifications, and testing of the source code that would be helpful to me in my analysis of Adobe's accused software activation system" (Ex. 4, Filing No. 530, at 4).

In response, Adobe has provided a substantial description of its methods of internal communication during the software testing process.  In its brief, Adobe detailed the protocols that are followed by software development engineers

-9-

wishing to communicate with one another, including the use of "wikis," "bug reports," meeting notes, test plans, technical specifications, and email exchanges.  According to Adobe, notes written on pieces of paper are not typically used for documentation at any stage of the software analysis.  Adobe provided declarations under penalty of perjury by Mr. Wilde and by Mr. Cheng to that effect.  In addition, as described by Adobe, Prism's previous deposition of another Adobe engineer, Vivek Masra, also confirms that the "coding and testing processes were performed electronically" (Filing No. 573, at 5).  Finally, Adobe notes that "all of the discovery requests Prism identifies in its motion seek only 'documents sufficient' to describe the operation of the accused products, not every scrap of handwritten notes ever created by anyone at any time" (*Id.* at 13).  "The source code and 300,000 pages of documents describing the accused systems that Adobe produced for these products is more than 'sufficient' to show their operation" (*Id.* at 13-14).  As of March 26, 2012, counsel for Adobe wrote in a letter to Prism, "I've discovered no instance so far in which anyone involved in development of the accused Adobe systems specifically recalled creating paper notes" (Ex. 10, Filing No. 574, at 2).

Prism identifies several discrepancies between Mr. Wilde's deposition testimony and his subsequent sworn declaration, which Prism maintains must have been written by

Adobe's counsel and not by Mr. Wilde himself.  The Court notes
Prism's arguments as to the many discrepancies between Mr.
Wilde's two descriptions of the notes, first, in his deposition
testimony, and second, in his sworn declaration.  However, Prism
has provided no evidence, other than Mr. Wilde's statements
during his deposition, that supports its conclusion that
destruction of evidence is taking place.

Here, the issue of destruction of evidence is a
question of fact that is not obvious to the Court.  In contrast,
in many of the cases cited by counsel, the question of whether or
not destruction of evidence had actually taken place was not at
issue.  *See Stevenson*, 354 F.3d 739, destruction of tape-recorded
voice radio communications; *Dillon,* 986 F.2d 263, destruction of
a vehicle; *Strutton*, 668 F.3d 549, destruction of agency emails;
*Medcorp, Inc. v. Pinpoint Technologies, Inc*., Civil Action No.
08CV00867, 2010 WL 2500301 (D. Colo. June 15, 2010), destruction
of computer hard drives; and *Greyhound Lines*, 485 F.3d 1032,
destruction of electronic control module data.  The Court cannot
meaningfully order a party to discontinue destroying objects that
do not exist.  Nevertheless, to the extent that any handwritten
notes are created that are responsive to Prism's discovery
requests, the Court will order Adobe to maintain and produce such
notes along with any other responsive, relevant evidence.

-11-

However, although required for a spoliation sanction, Prism has shown no evidence of any intent by Adobe to destroy evidence in an effort to hide the truth.  On the contrary, Adobe has produced a prodigious amount of documentation that describes its internal affairs in detail.  Thus, with regard to the requested adverse inference jury instruction, the Court finds that Prism has not met its burden by showing that spoliation has occurred and that the spoliation was intentional.  Prism's requests for an adverse jury instruction and for attorney fees will be denied.

**III.  Adobe's Request for Attorney Fees.**

Federal Rule of Civil Procedure 37 allows for the award of costs to a party who successfully opposes a discovery motion:

> If the motion [for an order compelling disclosure or discovery] is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.  But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(B).  Upon reviewing the circumstances underlying this motion, particularly, the contrast between the deposition testimony and the sworn declaration of Mr. Wilde, the

-12-

Court finds that Prism's motion for sanctions was "substantially justified," in that Prism could have argued, reasonably and in good faith, that spoliation of evidence had occurred. Accordingly,

IT IS ORDERED:

1) Prism's motion to preserve evidence and for sanctions (Filing No. 528) is granted, inasmuch as any existing handwritten notes regarding Adobe's source code will be preserved and produced, as described above;

2) Prism's motion to preserve evidence and for sanctions (Filing No. 528) is denied in all other respects; and

3) Adobe's request for attorney fees contained in its brief is denied.

DATED this 30th day of April, 2012.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court