IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PRISM TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 8:10CV220 |
| | ) | |
| v. | ) | |
| | ) | |
| ADOBE SYSTEMS, INCORPORATED; | ) | MEMORANDUM AND ORDER |
| AUTODESK, INC.; McAFEE, INC.; | ) | |
| SYMANTEC CORPORATION; | ) | |
| and TREND MICRO INCORPORATED, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the motion of plaintiff Prism Technologies, LLC ("Prism"), filed pursuant to Federal Rule of Civil Procedure 37(a), to compel defendant McAfee, Inc. ("McAfee") to respond to various discovery requests (Filing No. 701, with accompanying brief and index of evidence, Filing Nos. 702 and 703).  McAfee filed an opposing brief with indices of evidence (Filing Nos. 736, 737, and 738), and Prism filed a reply brief (Filing No. 746).  The Court finds that the motion to compel should be granted.

**I.  Federal Rules of Civil Procedure 26(b) and 37(a).**

""Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  Federal Rule of Civil Procedure 26(b) allows for broad discovery of "any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).  Relevance during discovery is not

measured by the Federal Rules of Evidence: "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Relevance is to be broadly construed for discovery issues and encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

However, the proponent of discovery must make "[s]ome threshold showing of relevance . . . before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). "Determinations of relevance in discovery rulings are left to the sound discretion of the trial court . . . ." *Hayden v. Bracy*, 744 F.2d 1338, 1342 (8th Cir. 1984).

In the event of noncompliance with a discovery request for relevant information, Rule 37(a) provides, "[A] party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "The party resisting production bears the burden of establishing lack of relevancy or undue burden." *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.* 198 F.R.D. 508, 511 (N.D. Iowa 2000).

**II.   Prism's Motion to Compel.**

Prism seeks to compel McAfee to respond to its Fourth Set of Requests for Production (Requests 113-114) "seeking financial documents pertaining to McAfee's use of its U.S.-based software activation system to activate software sold abroad" (Filing No. 701, at 1-2; Filing No. 746, at 11).  In addition, Prism seeks to compel McAfee to respond to its Sixth Set of Interrogatories (Nos. 21-23) "seeking activation data and related financials pertaining to McAfee's use of its U.S.-based software activation system to activate software sold abroad" (*Id.* at 2).[1]

The Patent Act states that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271(a).  At issue with this motion is whether all elements of an accused system must exist on U.S. soil in order for the infringement to occur "within the United States."

Prism alleges that McAfee has infringed U.S. Patent No. 7,290,288 ("'288 patent") in connection with software sold to end users who live outside the territorial United States.  Prism states, "The patent claims asserted in this case by Prism include

---

[1] Prism has supplied adequate evidence of compliance with the Nebraska "meet and confer" rule for discovery motions (Filing No. 702, at 6; *see* NECivR 7.0.1(i)).

'system' claims, which, under well-established law, can be infringed in the United States even if some elements of the accused system [here, the access key and the client computer] are located outside the United States" (Filing No. 702, at 4). Thus, "Prism seeks discovery sufficient to make a full calculation of damages with respect to such claims" (*Id.*).

Prism does not appear to contend that the customer who activates McAfee's software outside the United States "uses" the software in the context of its claims of infringement by McAfee. Rather, Prism's argument stems from its contention that McAfee's customers are not the only users of the accused system. Prism states that it will argue at trial that "McAfee makes its *own* use of the infringing system for its *own* benefit. Indeed, Prism will seek to prove that McAfee directly infringes by controlling and operating its activation system to its own advantage, namely anti-piracy and license enforcement benefits" (Filing No. 702, at 10-11).

In support of its contention that foreign sales do lead to infringement by McAfee, Prism cites *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F. Supp. 2d 147 (D.R.I. 2009) ("*Uniloc I*"), which Prism claims addresses the "*precise circumstances of this case*" (Filing No. 702, at 4). In *Uniloc I*, the court described the issue at hand as follows:

> While the parties tee this up as a
> damages question, the issue is much

-4-

>more fundamental:  whether Microsoft can be found to infringe Uniloc's '216 patent when part of the MPA [Microsoft Product Activation] system involves an extraterritorial component.  Put another way, does Microsoft "use" the claimed system "within the United States" as required by 35 U.S.C. § 271(a) even when Product Activation is used during activation of software on a foreign computer?

*Uniloc I*, 632 F. Supp. 2d at 155.  With regard to a system claim of a patent, which both parties agree is at issue here, the *Uniloc I* court noted, "use of a system claim may give rise to infringement (and thus be included in damages) if the United States is 'the place at which the system as a whole is put into service,' i.e., 'the place where control of the system is exercised and beneficial use of the system is obtained.'"  *Id.* at 156 (quoting *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317-18 (Fed. Cir. 2005)).  Therefore, "a claim of infringement is only actionable (and inclusion of foreign licenses in the damages calculation proper) if the United States is 'the place at which the system as a whole is put into service;' i.e., 'the place where control of the system is exercised and beneficial use of the system is obtained.'"  *Id.*[2]

---

[2] In *NTP*, infringement was found to have occurred inside the United States even when the defendant Research in Motion (RIM)'s "relay," part of the Blackberry system, was located in Canada.  The *NTP* court noted that an argument to the contrary "fails to appreciate the way in which the claimed NTP system is actually

The *Uniloc I* court noted, "When foreign individuals obtain licenses and activate their Microsoft software via the Microsoft Clearinghouse in the United States, the MPA system truly is (as both parties acknowledge) 'partly within and partly outside' the United States for purposes of infringement under Uniloc's § 271(a) theory, a system not unlike *NTP*." *Uniloc I*, 632 F. Supp. 2d at 156. The *Uniloc I* court rejected Microsoft's conclusion that "*all* parts of a collective system must be within the United States to infringe," stating that this was "the argument *NTP* rejected." *Id.* The *Uniloc I* court resolved the issue in this way:

> Therefore, the questions that must be answered before Microsoft's foreign licenses can be includable in any damage calculation are: 1) where the system as a whole is put into service; 2) where control of the system is exercised; and 3) where beneficial use of the system is obtained. Because the answers to these questions are fact intensive and will depend substantially on the evidence at trial, they are properly left for the jury. Therefore, the Court will allow evidence of foreign licenses to be presented at trial; however, the Court will instruct

---

used by RIM's customers. When RIM's United States customers send and receive messages by manipulating the handheld devices in their possession in the United States, the location of the use of the communication system as a whole occurs in the United States. This satisfactorily establishes that the situs of the 'use' of RIM's system by RIM's United States customers for purposes of section 271(a) is the United States." *NTP*, 418 F.3d at 1317.

> the jury that it may only include these licenses in the damage calculation if the answer to each of the above questions is the United States.  The Court will require the jury to answer special interrogatories to address the above questions and further to indicate how it arrived at any damage award, by specifying the number of domestic and foreign licenses they found to be infringed.

*Id.* at 156-57.  Here, Prism argues for a similar result: "Likewise, there is a fact-intensive inquiry yet to be performed by the jury in this case on the question of foreign activations, and Prism must be permitted to present relevant evidence, including damages evidence, on that question" (Filing No. 702, at 10).

In its opposition to Prism's motion, McAfee relies on the Federal Circuit's analysis of the word "use" in a case that "turn[ed] on what constitutes 'use' of a system or apparatus claim under § 271(a)."  *Centillion Data Sys., LLC v. Qwest Communic'ns Int'l, Inc.*, 631 F.3d 1279, 1283 (Fed. Cir. 2011).  In *Centillion*, which McAfee claims involves "virtually identical" facts to those at issue here, the Federal Circuit noted, "We have never directly addressed the issue of infringement for 'use' of a system claim that includes elements in the possession of more than one actor.  However, we defined the term in a very similar scenario in *NTP*."  *Centillion*, 631 F.3d at 1283.  The *Centillion*

-7-

court concluded, "We hold that to 'use' a system for purposes of infringement, a party must put the invention into service, i.e., control the system as a whole and obtain benefit from it."  *Id.* at 1284 (citing *NTP*, 418 F.3d at 1317).  The court stated that while a user need not have "physical or direct control" over every part of an accused system, nevertheless, the user must "use" every element of the accused system.  *Centillion*, 631 F.3d at 1284.

    Applying this standard to the facts before it, the *Centillion* court concluded, "We agree with Qwest that, as a matter of law, it does not 'use' the patented invention under the appropriate test from *NTP*.  To 'use' the system, Qwest must put the claimed invention into service, *i.e.*, control the system and obtain benefit from it."  *Id.* at 1286.  "While Qwest may make the back-end processing elements, it never 'uses' the entire claimed system because it never puts into service the personal computer data processing means.  Supplying the software for the customer to use is not the same as using the system."  *Id.*[3]

    McAfee emphasizes the fact that *Centillion* was decided after *Uniloc I*.  McAfee states that "the Federal Circuit's holding in *Centillion* establishes that the issue of foreign sales

---

[3] The *Centillion* court also held that Qwest was not vicariously liable for the use of its customers.  *Centillion*, 631 F.3d at 1287.

-8-

related to a system claim is an issue that can and should be decided by the Court," rather than by the jury, as the district court concluded in *Uniloc I* "without the benefit of the Federal Circuit's analysis in *Centillion*" (Filing No. 736, at 10).

Prism disagrees with McAfee's conclusion that the facts in *Centillion* are "virtually identical" to the facts of this case, and claims that the distinction is dispositive.  In *Centillion*, the patent at issue disclosed "a system for collecting, processing, and delivering information from a service provider, such as a telephone company, to a customer." *Centillion*, 631 F.3d at 1281.  The *Centillion* court considered two "manners of operation" of the Qwest accused system.  *Id.* at 1285.  "First, there is an on-demand function where a customer seeks particular and specified information by creating a query that the Qwest back-end system processes and provides a result for download (on-demand operation)." *Id.*  "Second, during the normal functioning of the system after a user subscribes, Qwest's back-end systems create periodic summary reports (standard operation) which are available for the user to download." *Id.*

Here, Prism is accusing McAfee of infringing only one system claim, Claim 187.  Prism states that its "allegations are different [from the *Centillion* case]; Claim 187 does not involve a customer's on-demand operation of software, and Prism is not

making a 'use-of-software' claim against McAfee.  Instead, Claim 187 is about 'controlling access to protected computer resources,' which McAfee does for its own benefit, without regard for customer demand" (Filing No. 746, at 8).  "Thus Prism has asserted a valid theory of infringement, and McAfee's argument that it cannot possibly be a direct infringer of [the] '288 patent must fail" (*Id.*).  The Court finds that the distinction between the Prism system claim and the Qwest system claim in *Centillion* bears strong consideration.  The Prism patent expressly describes a "system for controlling access to protected computer resources provided via an Internet Protocol network" ('288 Patent at 51:1-2).  Prism reasonably argues that the computer resources to be protected belong to McAfee, not McAfee's customers, such that it would be McAfee who would "use" the system for protection.

Prism also cites the Federal Circuit's opinion from the second iteration of the *Uniloc* litigation, wherein defendant Microsoft maintained that "Uniloc failed to prove direct infringement because Microsoft did not supply or use the end-users' computers that implemented the local licensee unique ID generating means and mode switching means."  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1308 (Fed. Cir. 2011), *reh'g denied* (Mar. 22, 2011) ("*Uniloc II*").  In rejecting Microsoft's argument, the Federal Circuit stated, "That other parties are

necessary to complete the environment in which the claimed element functions does not necessarily divide the infringement between the necessary parties." *Uniloc II*, 632 F.3d at 1309. "For example, a claim that reads 'An algorithm incorporating means for receiving e-mails' may require two parties to function, but could nevertheless be infringed by the single party who uses an algorithm that receives e-mails." *Id.*

At this stage of the litigation, the Court cannot say whether or not Prism's theory of McAfee's "use" of the accused system will succeed. However, the Court finds that Prism's discovery requests are relevant to its infringement claim involving McAfee's accused use of its system, even when one component of the system is physically located outside of the United States. Accordingly,

IT IS ORDERED that Prism's motion to compel (Filing No. 701) is granted. On or before July 31, 2012, McAfee will substantively respond to Prism's Fourth Set of Requests for Production (Requests 113-114) and Prism's Sixth Set of Interrogatories (Nos. 21-23).

DATED this 17th day of July, 2012.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court