IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

PRISM TECHNOLOGIES, LLC,              )
                                      )
            Plaintiff,                )        8:10CV220
                                      )
      v.                              )
                                      )
ADOBE SYSTEMS, INCORPORATED;          )    MEMORANDUM AND ORDER
AUTODESK, INC.; McAFEE, INC.;         )
SYMANTEC CORPORATION;                 )
and TREND MICRO INCORPORATED,         )
                                      )
            Defendants.               )
_____)

          This matter is before the Court on the motion of

plaintiff Prism Technologies, LLC ("Prism"), filed pursuant to

Federal Rule of Civil Procedure 37(a), to compel defendant Trend

Micro Incorporated ("Trend") to respond to various discovery

requests (Filing No. 707, with accompanying brief and indices of

evidence, Filing Nos. 708, 709, and 711).  Trend filed an

opposing brief with indices of evidence (Filing Nos. 725, 726,

and 727), and Prism filed a reply brief with indices of evidence

(Filing Nos. 749, 750, and 751).  The Court finds that the motion

to compel will be granted in part and denied in part.

## I.  Federal Rules of Civil Procedure 26(b) and 37(a).

          ""Mutual knowledge of all the relevant facts gathered

by both parties is essential to proper litigation." *Hickman v.*

*Taylor*, 329 U.S. 495, 507 (1947).  Federal Rule of Civil

Procedure 26(b) allows for broad discovery of "any nonprivileged

matter that is relevant to any party's claim or defense . . . ."

Fed. R. Civ. P. 26(b)(1).  Relevance is to be broadly construed for discovery issues and encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  However, the proponent of discovery must make "[s]ome threshold showing of relevance . . . before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).  "Determinations of relevance in discovery rulings are left to the sound discretion of the trial court . . . ." *Hayden v. Bracy*, 744 F.2d 1338, 1342 (8th Cir. 1984).

In the event of noncompliance with a discovery request for relevant information, Rule 37(a) provides, "[A] party may move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).  "The party resisting production bears the burden of establishing lack of relevancy or undue burden." *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

## II.  Prism's Motion to Compel.

Prism seeks an order granting its motion to compel Trend to respond to several discovery requests,[1] to which Trend objects.

### A.  Interrogatory Nos. 12-14 and 18.  Prism's

Interrogatory No. 1 asked Trend to "[i]dentify every Trend Micro software product available for purchase by the public after October 30, 2007, that is distributed at least in part on a CD-ROM disc, DVD disc, or other physical object and can be activated over the internet" (Ex. 5, Filing No. 709, at 3).  In its supplemental response to Interrogatory No. 1 given on November 18, 2011, Trend identified forty-three CD/DVD products (*Id.* at 4-5).  Prism claims that Trend has not given complete answers to Interrogatory Nos. 12-14 and 18 because the answers do not include all forty-three CD/DVD products.  In addition, Prism complains that for Interrogatory Nos. 13 and 14, Trend has used different product names in its responses that do not correlate with the forty-three names listed in its interrogatory response, "further confusing the issue" (Filing No. 708, at 13).

With regard to Trend, Prism produced initial infringement contentions on September 6, 2011 (Ex. 3, Filing No. 727), accusing seven CD/DVD products, and supplemental

---

[1] Prism has supplied adequate evidence of compliance with the Nebraska "meet and confer" rule for discovery motions (Filing No. 708, at 6-9; *see* NECivR 7.0.1(i)).

infringement contentions on November 18, 2011 (Ex. 4, Filing No. 727), accusing Trend's Endpoint Encryption suite of products. Now, as of April 30, 2012, Prism has attempted to supplement its infringement contentions a second time in order to include the other thirty-six CD/DVD products previously identified by Trend, for a total of all forty-three CD/DVD products (Ex. 1, Filing No. 726).   Trend objects to Interrogatory Nos. 12-14 and 18 to the extent that they request information for the newly accused thirty-six CD/DVD products, stating,

> [T]he true nature of Prism's requested relief is to have the Court grant Prism after-the-fact leave to amend its infringement contentions to add 36 accused Trend Micro products to the case, thereby multiplying the accused Trend Micro products six fold, and depriving Trend Micro of any ability to take discovery from Prism as to its infringement position concerning these 36 products.

(Filing No. 725, at 11).

In response to Prism's November 18, 2011, supplemental infringement contentions, Trend and the other defendants at the time moved for a protective order with this Court (Filing No. 330).   The Court issued an order in response to the motion where it commented extensively on the relationship between discovery requests and supplementation of infringement contentions (December 14, 2011, Memorandum and Order, Filing No. 410).   In that order, issued before the major *Markman* hearing on

-4-

January 12, 2012, this Court allowed further discovery regarding Prism's products that were "reasonably similar" to accused products and approved, albeit after the fact, Prism's November 18, 2011, supplemental infringement contentions.

However, also in the December 14, 2011, order, this Court stated, "Should other infringement theories evolve as discovery continues, the Court assumes that Prism will be able to explain why it could not have raised the issues earlier" (Filing No. 410, at 15).  Prism waited until three months after the January *Markman* hearing to attempt to supplement its infringement contentions a second time, without leave of Court.  Prism's attempt to offer new infringement contentions on the last day of discovery, April 30, 2012, is not acceptable.[2]  While it is true that this District does not have local patent rules that delimit the dates by which infringement contentions must be made, this Court clearly stated in the December 14, 2011, order that there is a calculus by which to analyze the situation.  The Court notes again that the Eastern District of Texas requires disclosure of preliminary infringement contentions "before discovery has even begun."  *Connectel, LLC, v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005).

---

[2] As Prism correctly points out, discovery was extended beyond this date for one limited purpose, to take depositions of Trend employees living in Taiwan (Filing No. 679).

This Court's more liberal policy of allowing Prism to supplement its infringement contentions last December, ten months before trial and almost a month before the major *Markman* hearing, should not have been taken as a carte blanche that would allow for supplementation at anytime thereafter.  Adding thirty-six infringement contentions at this late date in the discovery process cannot possibly be in accord with "the primary purpose of [patent infringement contentions, which] is to give a defendant notice of a plaintiff's specific theories of infringement." *Honeywell Intern. Inc. v. Acer America Corp.*, 655 F. Supp. 2d 650, 655 (E.D. Tex. 2009).  Even though Trend itself did identify the additional thirty-six CD/DVD products in its answer to Prism's Interrogatory No. 1, Trend still would have no way of knowing whether or not Prism intended to claim infringement of these products without timely supplemental infringement contentions to that effect.

Prism states that Interrogatory Nos. 12-14 seek "damages-related information" (Filing No. 708, at 6).  At this point, absent timely supplemental infringement contentions regarding the other thirty-six non-accused products, the Court cannot see that Prism's discovery requests are now relevant as to those products, even by discovery standards, that is, even by the standard that asks if the discovery could at least lead to a "matter that bears on, or that reasonably could lead to other

-6-

matter that could bear on, any issue that is or may be in the case." *Oppenheimer,* 437 U.S. at 351.

Interrogatory No. 18 requests, "For each software product identified by you in response to Prism Interrogatory No. 1, identify with specificity (e.g., name and version number) each software activation system used by you to control the activation of that product over the Internet" (Ex. 27, Filing No. 709, at 3). Prism states, "[S]ince Trend refuses to provide a complete answer to Interrogatory No. 18, which asks for nothing more than a basic identification of the activation system used by Trend for the 43 Trend CD/DVD products, Prism remains in the dark as to exactly which of these products, if any, utilize a different software activation system than the currently accused system" (Filing No. 749, at 12).

Although the forty-three CD/DVD products were identified by Trend on November 18, 2011, Interrogatory No. 18 was not served on Trend until March 20, 2012, four months later, and two months after the January 12, 2012 *Markman* hearing. The Court finds that Prism has not shown good cause as to why this interrogatory, which asks for "basic information" and seems to be leading to the newly proposed infringement contentions, could not have been issued months earlier, before the January 12, 2012, *Markman* hearing, so that responses could have led to supplemental infringement contentions at a reasonable time in the discovery

-7-

process.  Even a prompt response from Trend in April 2012 would have necessitated Prism to supplement its infringement contentions within only days or weeks of the close of discovery, which the Court finds to be too late to afford Trend adequate notice.

As to the naming problem, the Court is surprised that its help is needed with such an elementary issue.  Nevertheless, to the extent that direction is required, Trend will use whatever "uniform naming convention" is necessary so that its interrogatory responses for each product can be understood to correspond to products previously identified to Prism.

Accordingly, the Court grants Prism's motion to compel Trend to produce full, complete, and correct responses to Interrogatory Nos. 12-14 and 18, but only as to the accused products identified in Prism's infringement contentions dated September 6, 2011, and November 18, 2011.  Trend shall answer such interrogatories fully and completely to the extent it has not already done so, using uniform naming conventions.  In all other respects, Prism's motion to compel Trend to produce responses to Interrogatory Nos. 12-14 and 18 will be denied.

**B.  Interrogatory Nos. 15 and 29**.  Interrogatory No. 15 "asks Trend to state the quarterly costs of goods sold, broken down by sales channels, for the accused products in the U.S., so that Prism can meaningfully understand Trend's allocation of COGS

('costs of goods sold') for the products at issue in this case, for Prism's damages analysis" (Filing No. 708, at 14).  Prism complains that Trend's response does not allow Prism to "correlate the listed costs to 'each software product identified in [Trend's] response to Interrogatory No. 1,' as the Interrogatory requests" (*Id*.).

Trend responds that "Trend Micro does not store costs data on a per-product basis," quoting its corporate designee: "[W]e don't record expenses by product … it's by group and by department … I pull [costs] by department, not by product, because we don't record it that way" (Filing No. 725, at 17-18). Trend explains that its corporate designee, Erika Knapman, "also made clear that she could not collect expense data per product: '… by product expense, by product, I can't do that.'" (*Id*. at 18).  Trend concludes, "Prism is therefore seeking additional information that does not exist" (*Id*.).  Prism does not respond to this specific testimony, only citing earlier, more general testimony from Ms. Knapman's deposition.

The Court will not require Trend to produce information Trend has avowed to the Court is impossible to produce. Accordingly, Prism's motion to compel as to Interrogatory No. 15 will be denied.

Interrogatory No. 29 states:

> State in detail, by category and
> amount on a monthly, quarterly, or
> annual basis from 2006, to the
> present, your costs for purchasing,
> licensing, acquiring, building,
> maintaining, managing, and/or using
> the systems and methods used by you
> to activate software over the
> internet.

(Filing No. 708, at 10).  Prism complains that Trend has provided
"no response at all" to Interrogatory No. 29 (*Id.*).  Again, Trend
responds that such information is not available because "Trend
Micro does not track costs associated particularly with the
product activation component of Trend Micro's software" (Filing
No. 725, at 18).  Trend states, "To the extent Trend Micro has
costs information even approaching what Prism is seeking, which
would be costs for its consumer business unit and the other costs
set forth in the costs spreadsheet described above, Trend Micro
already has provided that information in the costs spreadsheet"
(*Id.*).  "To the extent Prism is seeking additional information in
response to Interrogatory No. 29, Trend Micro cannot provide such
information as it does not exist, as Trend Micro explained to
Prism during the meet and confer process"  (*Id.*).

Prism explains, "This interrogatory is not limited to a
software component, and Trend has not explained why it cannot
provide costs associated with, for example (and without
limitation):  technology and patent licenses; the purchase and

-10-

operation of servers, databases, and other hardware and infrastructure components; and the materials and labor used to build, operate and maintain the various components of Trend's activation systems and methods" (Filing No. 749, at 16).  The Court finds that Prism's elucidation of Interrogatory No. 29 is substantially different and more expansive than what is suggested by the language used in the interrogatory itself, and that Prism's new elucidation amounts to a supplemental interrogatory that is not allowed after the close of discovery.   Accordingly, Prism's motion to compel as to Interrogatory No. 29 will be denied.

### C.  Request for Production of Documents Nos. 50 and 54.

Request for Production of Documents No. 50 "seeks information showing on a monthly, quarterly or annual basis the gross profits generated and/or recognized by Trend as a result of the sale of the accused technology at issue" (Filing No. 708, at 15).  Prism states that "Trend has failed to provide any documents responsive to this RFP" (*Id.*).  Trend responds that "Ms. Knapman spent substantial effort preparing a second spreadsheet of financial information, which contains thousands of cells of revenue data" (Filing No. 725, at 19).  "Prism is apparently seeking further information that would be calculated using costs and expenses on a per-product basis.  But such data does not exist, as was explained to Prism during Ms. Knapman's

-11-

deposition and during the meet and confer process . . ." (*Id.* at 19-20). Prism replies, "The fact that Trend produced certain other financial information does not satisfy RFP No. 50's request for gross profits data and does not allow Prism to calculate the gross profits . . ." (Filing No. 749, at 17).

Request for Production of Documents No. 54 "asks for documents sufficient to show the costs and/or expenses deducted by Trend from net revenues to calculate net profits for the accused technology" (Filing No. 708, at 16). Again, Prism complains that Trend has not complied. Trend responds, "Trend Micro provided the best information that it has on this issue in the costs spreadsheet described above. . . . In addition, Trend Micro's document production also includes, for example, Trend Micro annual reports with various expense, revenue, and profit calculations" (Filing No. 725, at 19). "To the extent Prism is seeking specific cost information on a product-by-product basis, Ms. Knapman testified that such information does not exist . . ." (*Id.*).

Prism replies, "[S]preadsheet TM90000386 (Exhibit 37) – purportedly responsive to RFP No. 54 – does not contain costs/expenses data to show how Trend derives net profits from net revenues on a per-product basis, as requested in the RFP. Rather, it contains only a single 'Cost of Goods Sold' line item" (Filing No. 749, at 17). Prism concedes, "As for providing the

data on a per-product basis, Prism understands Trend's claim that
it may not track *Costs of Goods Sold* in this manner (Opp. at 13,
15), but Trend has never stated that it does not track other
costs and expenses on a per-product basis for purposes of
deriving net profits from net revenues" (*Id.*).  Prism states,
"Trend should be compelled to produce the information, or if it
truly does not exist, to provide a verified discovery response to
that effect" (*Id.* at 18).  The Court agrees.  Accordingly, Trend
will either produce the information in Request for Production of
Documents Nos. 50 and 54, or, if the requested information does
not exist, Trend will inform the Court of that fact by filing an
affidavit.

**D.  Interrogatory Nos. 21-23 and Request for Production
of Documents Nos. 102-103**.  Prism seeks to compel Trend to
respond to Interrogatory Nos. 21-23 and Request for Production
Nos. 102-103 involving "activation statistics and related
financials pertaining to Trend's use of its U.S.-based activation
system to activate software installed on client computers located
abroad" (Filing No. 708, at 9).

The Patent Act states that "whoever without authority
makes, uses, offers to sell, or sells any patented invention,
within the United States or imports into the United States any
patented invention during the term of the patent therefor,
infringes the patent."  35 U.S.C. § 271(a).  At issue with this

-13-

motion is whether all elements of an accused system must exist on U.S. soil in order for the infringement to occur "within the United States."

Prism alleges that Trend has infringed U.S. Patent No. 7,290,288 ("'288 patent") in connection with software sold to end users who live outside the territorial United States.  Prism states, "The patent claims asserted in this case by Prism include 'system' claims, which, under well-established law, can be infringed in the United States even if some elements of the accused system [here, the access key and the client computer] are located outside the United States" (Filing No. 708, at 17).  Thus, "Prism seeks discovery sufficient to make a full calculation of damages with respect to such claims" (*Id.*).

Prism does not appear to contend that the customer who activates Trend's software outside the United States "uses" the software in the context of its claims of infringement by Trend.  Rather, Prism's argument stems from its contention that Trend's customers are not the only users of the accused system.  Prism states that it will argue at trial that "Trend makes its *own* use of the infringing system for its *own* benefit.  Indeed, Prism will seek to prove that Trend directly infringes by controlling and operating its activation system to its own advantage, namely anti-piracy and license enforcement benefits" (Filing No. 708, at 22).

-14-

In support of its contention that foreign sales do lead to infringement by Trend, Prism cites *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F. Supp. 2d 147 (D.R.I. 2009) ("*Uniloc I*"), which Prism claims addresses the "*precise circumstances of this case*" (Filing No. 708, at 18). In *Uniloc I*, the court described the issue at hand as follows:

> While the parties tee this up as a damages question, the issue is much more fundamental: whether Microsoft can be found to infringe Uniloc's '216 patent when part of the MPA [Microsoft Product Activation] system involves an extraterritorial component. Put another way, does Microsoft "use" the claimed system "within the United States" as required by 35 U.S.C. § 271(a) even when Product Activation is used during activation of software on a foreign computer?

*Uniloc I*, 632 F. Supp. 2d at 155. With regard to a system claim of a patent, which both parties agree is at issue here, the *Uniloc I* court noted, "use of a system claim may give rise to infringement (and thus be included in damages) if the United States is 'the place at which the system as a whole is put into service,' i.e., 'the place where control of the system is exercised and beneficial use of the system is obtained.'" *Id.* at 156 (quoting *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317-18 (Fed. Cir. 2005)). Therefore, "a claim of infringement is only actionable (and inclusion of foreign

licenses in the damages calculation proper) if the United States is 'the place at which the system as a whole is put into service;' i.e., 'the place where control of the system is exercised and beneficial use of the system is obtained.'"   *Id.*[3]

The *Uniloc I* court noted, "When foreign individuals obtain licenses and activate their Microsoft software via the Microsoft Clearinghouse in the United States, the MPA system truly is (as both parties acknowledge) 'partly within and partly outside' the United States for purposes of infringement under Uniloc's § 271(a) theory, a system not unlike *NTP*."  *Uniloc I*, 632 F. Supp. 2d at 156.  The *Uniloc I* court rejected Microsoft's conclusion that "*all* parts of a collective system must be within the United States to infringe," stating that this was "the argument *NTP* rejected."  *Id.*  The *Uniloc I* court resolved the issue in this way:

> Therefore, the questions that must
> be answered before Microsoft's
> foreign licenses can be includable
> in any damage calculation are:

---

[3] In *NTP*, infringement was found to have occurred inside the United States even when the defendant Research in Motion (RIM)'s "relay," part of the Blackberry system, was located in Canada. The *NTP* court noted that an argument to the contrary "fails to appreciate the way in which the claimed NTP system is actually used by RIM's customers.  When RIM's United States customers send and receive messages by manipulating the handheld devices in their possession in the United States, the location of the use of the communication system as a whole occurs in the United States. This satisfactorily establishes that the situs of the 'use' of RIM's system by RIM's United States customers for purposes of section 271(a) is the United States."  *NTP*, 418 F.3d at 1317.

-16-

1) where the system as a whole is put into service; 2) where control of the system is exercised; and 3) where beneficial use of the system is obtained.  Because the answers to these questions are fact intensive and will depend substantially on the evidence at trial, they are properly left for the jury.  Therefore, the Court will allow evidence of foreign licenses to be presented at trial; however, the Court will instruct the jury that it may only include these licenses in the damage calculation if the answer to each of the above questions is the United States.  The Court will require the jury to answer special interrogatories to address the above questions and further to indicate how it arrived at any damage award, by specifying the number of domestic and foreign licenses they found to be infringed.

*Id.* at 156-57.  Here, Prism argues for a similar result: "Likewise, there is a fact-intensive inquiry yet to be performed by the jury in this case on the question of foreign activations, and Prism must be permitted to present relevant evidence, including damages evidence, on that question" (Filing No. 708, at 21).

In its opposition to Prism's motion, Trend relies on the Federal Circuit's analysis of the word "use" in a case that "turn[ed] on what constitutes 'use' of a system or apparatus claim under § 271(a)."  *Centillion Data Sys., LLC v. Qwest Communic'ns Int'l, Inc.*, 631 F.3d 1279, 1283 (Fed. Cir. 2011).

In *Centillion*, the Federal Circuit noted, "We have never directly addressed the issue of infringement for 'use' of a system claim that includes elements in the possession of more than one actor. However, we defined the term in a very similar scenario in *NTP*." *Centillion*, 631 F.3d at 1283.  The *Centillion* court concluded, "We hold that to 'use' a system for purposes of infringement, a party must put the invention into service, i.e., control the system as a whole and obtain benefit from it." *Id.* at 1284 (citing *NTP*, 418 F.3d at 1317).  The court stated that while a user need not have "physical or direct control" over every part of an accused system, nevertheless, the user must "use" every element of the accused system.  *Centillion*, 631 F.3d at 1284.

Applying this standard to the facts before it, the *Centillion* court concluded, "We agree with Qwest that, as a matter of law, it does not 'use' the patented invention under the appropriate test from *NTP*.  To 'use' the system, Qwest must put the claimed invention into service, *i.e.*, control the system and obtain benefit from it." *Id.* at 1286.  "While Qwest may make the back-end processing elements, it never 'uses' the entire claimed system because it never puts into service the personal computer data processing means.  Supplying the software for the customer to use is not the same as using the system." *Id.*[4]

---

[4] The *Centillion* court also held that Qwest was not vicariously liable for the use of its customers.  *Centillion*, 631 F.3d at 1287.

Trend emphasizes the fact that both *NTP* and *Centillion* established that "the use of the system as a whole" occurs where the end user, or customer, "puts the system into service" (Filing No. 725, at 21). Prism disagrees with Trend's conclusion, emphasizing that *NTP* and *Centillion* were decided with the emphasis on the end user, or customer, because of the specific facts presented by those cases. "Trend appears to be claiming that these cases establish black-letter law stating that systems with disparately-located components can only be 'used' by customers. This claim is incorrect; Trend is merely stating the end-result of these courts' analyses as to the specific facts of specific cases" (Filing No. 749, at 24). For example, Prism claims that "*Centillion* is distinguishable on its facts," and that the distinction is dispositive (*Id.*).

In *Centillion*, the patent at issue disclosed "a system for collecting, processing, and delivering information from a service provider, such as a telephone company, to a customer." *Centillion*, 631 F.3d at 1281. The *Centillion* court considered two "manners of operation" of the Qwest accused system. *Id.* at 1285. "First, there is an on-demand function where a customer seeks particular and specified information by creating a query that the Qwest back-end system processes and provides a result for download (on-demand operation)." *Id.* "Second, during the normal functioning of the system after a user subscribes, Qwest's

back-end systems create periodic summary reports (standard operation) which are available for the user to download." *Id.*

Here, Prism is accusing Trend of infringing only one system claim, Claim 187. Prism states that its "allegations are different [from the *Centillion* case]; Claim 187 does not involve a customer's on-demand operation of software, and Prism is not making a 'use-of-software' claim against Trend. Instead, Claim 187 is about 'controlling access to protected computer resources,' which Trend does for its own benefit, without regard for customer demand" (Filing No. 749, at 24). "Thus Prism has asserted a valid theory of infringement, and Trend's argument that it cannot possibly be a direct infringer of [the] '288 patent must fail" (*Id.*). The Court finds that the distinction between the Prism system claim and the Qwest system claim in *Centillion* bears strong consideration. The Prism patent expressly describes a "system for controlling access to protected computer resources provided via an Internet Protocol network" ('288 Patent at 51:1-2). Prism reasonably argues that the computer resources to be protected belong to Trend, not Trend's customers, such that it would be Trend who would "use" the system for protection.

Prism also cites the Federal Circuit's opinion from the second iteration of the *Uniloc* litigation, wherein defendant Microsoft maintained that "Uniloc failed to prove direct

infringement because Microsoft did not supply or use the end-users' computers that implemented the local licensee unique ID generating means and mode switching means." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1308 (Fed. Cir. 2011), *reh'g denied* (Mar. 22, 2011) ("*Uniloc II*"). In rejecting Microsoft's argument, the Federal Circuit stated, "That other parties are necessary to complete the environment in which the claimed element functions does not necessarily divide the infringement between the necessary parties." *Uniloc II*, 632 F.3d at 1309. "For example, a claim that reads 'An algorithm incorporating means for receiving e-mails' may require two parties to function, but could nevertheless be infringed by the single party who uses an algorithm that receives e-mails." *Id.*

At this stage of the litigation, the Court cannot say whether or not Prism's theory of Trend's "use" of the accused system will succeed. However, the Court finds that Prism's discovery requests are relevant to its infringement claim involving Trend's accused use of its system, even when one component of the system is physically located outside of the United States. Accordingly,

IT IS ORDERED that Prism's motion to compel (Filing No. 707) is granted in part and denied in part, as follows:

1) Prism's motion to compel Trend to produce responses to Interrogatory Nos. 12-14 and 18 is granted, but only as to the

accused products identified in Prism's infringement contentions dated September 6, 2011, and November 18, 2011.  Trend shall answer such interrogatories fully and completely to the extent it has not already done so, using uniform naming conventions.  In all other respects, Prism's motion to compel Trend to produce responses to Interrogatory Nos. 12-14 and 18 is denied;

2) Prism's motion to compel Trend to produce responses to Interrogatory Nos. 15 and 29 is denied;

3) Prism's motion to compel Trend to produce responses to Requests for Production of Document Nos. 50 and 54 is granted. Trend shall either produce the requested information, or, if the requested information does not exist, Trend shall inform the Court of that fact by an affidavit filed on or before August 8, 2012;

4)  On or before August 8, 2012, Trend will substantively respond to Prism's Fourth Set of Requests for Production (Requests 102-103) and Prism's Sixth Set of Interrogatories (Nos. 21-23); and

5) Trend will file with the Court a certificate of compliance with this order on or before August 8, 2012.

DATED this 26th day of July, 2012.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court